*HHN*

*FILED*
*J.N* 5-27-2008
MAY 27 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ANDREA JONES, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 08 CV 1741 |
| | ) | Judge Castillo |
| VILLAGE OF MAYWOOD, ILLINOIS, a | ) | Magistrate Judge Ashman |
| municipal corporation, TIMOTHY CURRY, S. | ) | |
| CORDOBA, R. OCHOA, L. KELLY, K. WEST | ) | |
| and UNKNOWN DEFENDANTS, | ) ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS

NOW COME the Defendants, VILLAGE OF MAYWOOD, ILLINOIS (the "Village"),

TIMOTHY CURRY ("Sergeant Curry"), S. CORDOBA ("Officer Cordoba"), R. OCHOA

("Officer Ochoa"), L. KELLY ("Officer Kelly"), K. WEST ("Sergeant West"), and UNKNOWN

DEFENDANTS, by and through their attorneys, KLEIN, THORPE AND JENKINS, LTD., and

hereby move this Honorable Court to dismiss Counts II, III, IV, V and VI of Plaintiff's

Complaint. In support thereof, Defendants state as follows:

## INTRODUCTION

Plaintiff, Andrea Jones ("Jones"), filed her six-count complaint on March 26, 2008

against the Village and five individually named Maywood Police Department officers pursuant

to a Section 1983 civil rights federal action and pendant state law tort claims. Specifically, Jones

asserted three Section 1983 claims (false arrest against Sergeant Curry, unreasonable

detention/violation of due process against all defendants, and a failure to train Monell violation

against the Village), state law claims for intentional infliction of emotional distress and false

imprisonment against all defendants, and a state law claim for malicious prosecution against Sergeant Curry, Officer Cordoba and the Village.

The complaint arises out of an alleged incident that purportedly occurred on or about March 31, 2007. According to the complaint, Jones was present on a public way in the Village of Maywood when Sergeant Curry ordered her arrest, allegedly without probable cause. *Complaint* at ¶¶ 12-14. Jones alleged she was then transported to the Maywood police department and "placed in a cage which lacked the basic requirements of a bed or a bench," where she was held from approximately 10 p.m. to 6:20 a.m. *Id.* at ¶¶ 15-16.

Jones further alleged that during her detention she was not completely segregated from male detainees, was forced to sit on the floor for an extended period of time, and was forced to refrain from basic human requirements due to the toilet facilities in the detention cell not having a door. *Complaint* at ¶ 17. Jones was charged with a misdemeanor offense of obstructing a peace officer, and released on bail at approximately 6:20 a.m. *Id.* at ¶¶ 19-22. Jones alleged she was found not guilty of such charge after a jury trial was held on November 13, 2007. *Id.* at ¶ 22.

## I.    STANDARD OF REVIEW FOR A RULE 12(B)(6) MOTION TO DISMISS

In ruling on a Rule 12(b)(6) motion to dismiss, a court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Hentosh v. Herman M. Finch University of Health Sciences/The Chicago Medical School*, 167 F.3d 1170, 1173 (7th Cir. 1999). However, the court is not required to accept legal conclusions either alleged or inferred from the pleaded facts. *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Dev. Co.*, 758 F.2d 203, 207 (7th Cir. 1985). Dismissal pursuant to Rule 12(b)(6) is proper if it is clear that no relief could be granted under any set of facts that could be

consistent with the allegations in the complaint. *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997).

## II.    JONES' SECTION 1983 CLAIMS IN COUNTS II AND III ARE INSUFFICIENT AS A MATTER OF LAW AND SHOULD BE DISMISSED

Jones' Section 1983 unreasonable detention and due process violation claim in Count II should be dismissed as to Officers Cordoba, Ochoa, Kelly and Sergeants West and Curry for failure to state a cause of action against these defendants, as the pleadings do not indicate in any way that these defendants were involved in the alleged incident. Even under the notice pleading standard for Section 1983 claims set forth in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), Jones' claims as to these defendants cannot survive a Rule 12(b)(6) motion to dismiss because the pleadings fail to allege these defendants had any interaction with Jones leading to any deprivation of her constitutional rights. Additionally, Count II should be dismissed as to the Village because the allegations fail to state a legally cognizable cause of action under *Monell*.

Additionally, Jones' Section 1983 failure to train and Monnell [sic] violations claim against the Village in Count III of the complaint should be dismissed because the allegations fail to state a legally cognizable cause of action under *Monell v. Dep. Of Social Services of City of New York*, 436 U.S. 658, 694 (1978). Therefore, for the reasons outlined below, Jones' Section 1983 claims contained in Counts II and III should be dismissed, in their entirety, pursuant to Rule 12(b)(6).

A.   **Count II Fails To State A Cause of Action Against Any Defendant As A Matter Of Law**

Jones Section 1983 claim for unreasonable detention and violation of due process fails to state a cause of action against any defendant. Therefore, for the reasons outlined below, Count II should be dismissed.

1.   **The pleadings failed to allege that Officers Cordoba, Ochoa and Kelly and Sergeants West and Curry were personally responsible for any actions that purportedly violated Jones' rights to be free from unreasonable detention or due process**

In order to state a claim under Section 1983, a plaintiff must allege that (1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under color of State law. *Stevens v. Umsted*, 131 F.3d 697, 700 (7th Cir. 1997). Count II alleges that "based on the totality of the circumstances, encompassing the violation of liberty interests and standards, by holding the Plaintiff in custody in a cage without a bed or a bench, in contact of detainees of the opposite gender, without physical privacy to use the toilet, delaying her right to make phone calls and being held for an unreasonable length of time without accepting her bail constitutes unreasonable conditions of confinement in violation of Plaintiff's fourth and fourteenth Amendment rights." *Complaint* at ¶ 35.

Jones alleged that her constitutional rights were violated while she was detained at the Maywood Police Department because the holding cell and conditions of her detention did not meet the requirements outlined in the Illinois Administrative Code, 20 Ill. Admin. Code §§ 720.20 and 720.50, and the Illinois Supreme Court Rules applicable to bail for misdemeanor offenses. *Complaint* at ¶¶ 29-33. However, Jones failed to plead any factual allegations about the acts of any individual officer named in the complaint with regard to her detention at the Maywood Police Department. In fact, the only allegation made against any individual named

officer in the complaint was her arrest by Sergeant Curry, where Jones then stated another officer transported her to the Maywood Police Department subsequent to the arrest. Therefore, Jones failed to adequately plead that any individual defendant deprived her of any constitutional rights, and Count II should be dismissed as to Officers Cordoba, Ochoa and Kelly and Sergeants West and Curry.

### 2.    Count II contains insufficient *Monell* allegations against the Village

Count II makes no indication as to Jones' theory for the Village's alleged liability under a Section 1983 claim for unreasonable detention and violation of due process. However, it is axiomatic that a municipality cannot be liable under Section 1983 under a theory *respondeat superior*. *Monell*, 436 U.S. at 691. Therefore, Jones must allege that her damages were caused by a policy or custom of the municipality. *Id.* at 694. As argued in Section A above, the allegation of a single occurrence is not sufficient to allege such a "policy of established practice." *Askew*, 880 F.Supp at 563. It is only when the execution of a municipality's policy or custom inflicts the injury that the entity is responsible. *Gable*, 296 F.3d at 537. Therefore, for Jones to maintain her cause of action against the Village, as set forth in Count II, she would have to establish the requisite culpability (a "policy of custom" attributable to municipal policymakers) and the requisite causation (the policy or custom was the "moving force" behind the constitutional deprivation). *Id.*

Here, Jones makes no allegations that the Village had a practice or custom of violating of violating detainees' constitutional rights. In fact, the allegations in Count II are expressly tailored to Jones' detainment and in no way indicate her alleged situation is recurring. Therefore, Jones alleged isolated incident is insufficient as a matter of law to establish *Monell* liability against the Village, and Count II should be dismissed.

**B.    Count III Contains Insufficient *Monell* Allegations to Sustain
Jones' Complaint Against the Village**

In order to sufficiently plead a federal civil rights claim against a municipality, a plaintiff

must allege facts to support a municipal custom or policy that caused the violations alleged. *See,*

*e.g. Askew v. Fairman*, 880 F.Supp. 557, 563 (N.D. Ill. 1995) (citing *Kentucky v. Graham*, 473

U.S. 159, 167 (1985); *City of Oklahoma v. Tuttle*, 471 U.S. 808, 822-23 (1985)); *see also*

*Monell*, 436 U.S. at 694.  The allegation of a single occurrence is not sufficient to allege such a

"policy of established practice." *Askew*, 880 F.Supp at 563.  It is only when the execution of a

municipality's policy or custom inflicts the injury that the entity is responsible. *Gable v. City of*

*Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).  Therefore, for Jones to maintain her cause of action

against the Village as set forth in Count III, she would have to establish the requisite culpability

(a "policy of custom" attributable to municipal policymakers) and the requisite causation (the

policy or custom was the "moving force" behind the constitutional deprivation). *Id.*

A municipality will be held liable for a *Monell* violation for failure to train its officers

only when the inadequacy of training amounts to deliberate indifference of the constitutional

rights of the individuals with whom the officers came into contact. *Thomas v. Sheahan*, 499

F.Supp.2d 1062, 1095 (N.D. Ill. 2007) (citing *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir.

2007); *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  Deliberate indifference is shown

when a municipality fails to train its employees to handle a recurring situation that presents an

obvious potential for a constitutional violation and this failure to train results in a constitutional

violation. *Id.* at 1095-96 (citing *Dunn v. City of Elgin, Illinois*, 347 F.3d 641, 646 (7th Cir.

2003).  A plaintiff must also demonstrate that the municipality had notice of a pattern of

constitutional violations resulting from the inadequate training. *Washington v. Village of*

*Riverside*, 2003 WL 1193347, *8 (N.D. Ill. March 13, 2003) (citing *Hirsh v. Burke*, 40 F. 3d 900,

904 (7th Cir. 1994) (noting there was no evidence that the Village had a policy or custom encouraging their officers to violate the constitutional rights of others). A copy of this Westlaw cited case is attached hereto as *Exhibit A*.

In Count III, Jones simply alleged that the Village had a duty to train its employees regarding the law as it pertains to conditions of confinement and release on bail of misdemeanor arrestees, as detailed in the Illinois Administrative Code, 20 Ill. Adm. Code §§ 720.20 and 720.50, and the Illinois Supreme Court Rules, and that the Village "demonstrated a deliberate indifference to arrestees by failing to train its employees to manage the recurring situation...which presented the obvious potential for a constitutional violation, and did in fact result in a constitutional violation." *Complaint* at ¶¶ 36-38. These allegations are insufficient to establish *Monell* liability for the Village. Jones failed to allege any facts that would establish either culpability or causation, or which indicate any policy of custom of the Village that played any role in the incident complained of. Moreover, by simply making the conclusory statement that a recurring situation exists in the Village, Jones failed to adequately plead such a recurring situation. These allegations fail to establish the Village had a policy or custom encouraging the violation of constitutional rights, and therefore Count III should be dismissed.

### III.  JONES' STATE LAW CLAIMS ARE INSUFFICIENT AS A MATTER OF LAW AND SHOULD BE DISMISSED

Jones' state law claims in Counts IV (intentional infliction of emotional distress), V (false imprisonment) and VI (malicious prosecution) should be dismissed pursuant to Section 2-202 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act (the "Tort Immunity Act"), 745 ILCS 10/2-202. Alternatively, Counts IV and V should be dismissed as to Officers Cordoba, Ochoa, Kelly and Sergeant West, and Count VI should be dismissed as to Officer Cordoba because the allegations fail to state a cause of action against these defendants, as

the pleadings do not indicate in any way these defendants were involved with Jones during the alleged incident.   Count VI should also be dismissed as it fails to state a state law claim for malicious prosecution.   For the reasons outlined below, these state law claims are entirely insufficient and should be dismissed as a matter of law.

**A.    The Tort Immunity Act Bars Jones' State Law Claims For Intentional Infliction Of Emotional Distress, False Imprisonment And Malicious Prosecution**

Section 2-202 of the Tort Immunity Act immunizes public employees against claims alleging an act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton misconduct. See 745 ILCS 10/2-202.   Section 2-202 provides:

> A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct.

745 ILCS 10/2-202.   Additionally, Section 2-109 of the Local Government Tort Immunity Act immunizes a public entity from liability where its employee is not liable.   745 ILCS 10/2-109. Conduct is "willful and wanton" when it "shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property.   Here, defendant police officers were enforcing the law at the time of Jones' arrest, as evidenced by Jones' own allegations in the complaint that she was arrested and charged with the crime of obstructing a peace officer, and that the defendants were acting under color of law. *Complaint* at ¶¶ 6-10, 14.   Therefore, defendants are clearly immune from liability for intentional infliction of emotional distress, false imprisonment and malicious prosecution under Illinois law unless their acts constitute willful and wanton conduct.

The Tort Immunity Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter

indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. Courts have on numerous occasions addressed whether acts of law enforcement officers constitute willful and wanton conduct. *See Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) (pulling alleged traffic law violator from car, pushing him against car and pinning his arms behind his back was not willful and wanton conduct); *Gordon v. Degelmann*, 29 F.3d 295, 299 (7th Cir. 1994) (unlawful arrest of boyfriend for criminal trespass when he refused to leave girlfriend's house at which he resided was not willful and wanton conduct). *But see Torres v. City of Chicago*, 123 F.Supp.2d 1130, 1133 (N.D. Ill. 2000) (police officers who failed to summon medical care for a shooting victim for nearly an hour and a half after arriving at the scene committed willful and wanton conduct).

In this case, Jones makes no allegation that the defendant police officers acted willfully and wantonly in their arrest of Jones for obstructing a peace officer. The only inferred allegation is contained in the claim for intentional infliction of emotional distress, which states "the defendants' conduct that resulted in this emotional distress was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights." *Complaint* at ¶ 43. Although defendants' acts in no way arise to the level of conduct court's have previously held to be willful and wanton, these allegations in Count IV are nothing more than legal conclusions that a court is not required to accept. *See Sledd v. Lindsay*, 780 F.Supp 554, 557 (N.D. Ill. 1991). Moreover, mere conclusory allegations of willful and wanton conduct are insufficient to overcome a public employee's immunity. *Youker v. Schoenenberger*, 22 F.3d 163, 168 (7th Cir. 1994). Therefore, the state law claims for intentional infliction of emotional distress, false imprisonment, and malicious prosecution should be dismissed as to all defendants (as stated above, the Village is immune under Section 2-109 of the Tort Immunity Act sine its employees cannot be held liable).

**B.    Counts IV, V And VI Do Not Allege That Officers Cordoba, Ochoa And Kelly And Sergeant West Were Responsible For Any Actions That Purportedly Violated Jones' Rights**

Although Counts IV, V and VI should be dismissed against all defendants pursuant to the Tort Immunity Act, as noted above, in the alternative, Counts IV and V should be dismissed as to Officers Cordoba, Ochoa, Kelly and Sergeant West, and Count VI should be dismissed as to Officer Cordoba because Jones failed to allege any of these named defendants were responsible in any way for an action that purportedly violated Jones' rights. The only officer implicated in the allegations as pled in Jones' complaint is Sergeant Curry, and therefore Jones fails to state a cause of action against any other named police officer.

In order to state a cause of action for intentional infliction of emotional distress under Illinois law, Jones must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict sever emotional distress, or knew there was a high probability that his conduct would cause severe emotional distress; and (3) the defendant's conduct in fact caused severe emotional distress. *Carr v. Village of Richmond*, 1996 WL 663921, *7 (N.D. Ill. November 15, 1996). A copy of this Westlaw cited case is attached hereto as *Exhibit B*. Count IV of the complaint alleges that at all times "Defendants Timothy Curry, S. Cordoba, R. Ochoa, L. Kelly, K. West and other unknown employees were employees or agents of the Village of Maywood working within the scope of their employment or agency." *Complaint* at ¶ 44. However, aside from the alleged acts of Sergeant Curry, Jones fails to allege what the acts of these other individual named defendants were that constituted extreme and outrageous conduct. Therefore, Jones failed to state a cause of action for intentional infliction of emotional distress against Officers Cordoba, Ochoa, Kelly and Sergeant West, and Count IV should be dismissed as to those defendants.

In order to state a cause of action for false imprisonment under Illinois law, a plaintiff must show he was "restrained or arrested by the defendant, and that the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff." *Meerbrey v. Marshall Field & Co.*, 139 Ill.2d 455, 474, 564 N.E.2d 1222 (1990). Here, Jones only alleged she was arrested by Sergeant Curry. Jones makes no allegations in the complaint as the actions of any other named individual officer constituting the required elements of a claim for false imprisonment. Therefore, Jones failed to state a cause of action for false imprisonment against Officers Cordoba, Ochoa, Kelly and Sergeant West, and Count V should be dismissed as to those defendants.

Finally, to establish a claim for malicious prosecution in Illinois, a plaintiff must provide allegations supporting *each* element of a malicious prosecution claim, including "(1) the initiation or continuance of some judicial proceeding *by defendant*; (2) the termination of the proceeding in the plaintiff's favor; (3) the absence of probable cause for such a proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Trusty v. McCall*, 1999 WL 787628, *2 (N.D. Ill. September 24, 1999) (citing *Hahn v. Village of Downers Grove*, 1999 WL 167036, *3 (N.D. Ill. March 19, 1999) (emphasis added). Copies of these Westlaw cited cases are attached as *Exhibit C*. Here, Jones makes no allegation that Officer Cordoba was in any way a part of the criminal proceeding. The only allegation in Count VI pertaining to an individually named defendant is that "Defendant Timothy Curry caused the commencement or continuance of an original criminal proceeding against the Plaintiff." Therefore, Jones failed to state a cause of action for malicious prosecution against Officer Cordoba, and Count VI should be dismissed as to him.

**C.    Count VI Fails To Adequately Plead A State Law Claim For Malicious Prosecution**

As stated above, in order to state a claim for malicious prosecution, Jones must allege the following elements: "(1) the initiation or continuance of some judicial proceeding *by defendant*; (2) the termination of the proceeding in the plaintiff's favor; (3) the absence of probable cause for such a proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Trusty v. McCall*, 1999 WL 787628, *2 (N.D. Ill. September 24, 1999) (citing *Hahn v. Village of Downers Grove*, 1999 WL 167036, *3 (N.D. Ill. March 19, 1999) (emphasis added). Even where a defendant officer is the sole witness relied upon by the prosecution, malicious prosecution claims are not favored under Illinois law:

> Although the Court believes that [the defendant officer], as the *sole* grand jury witness, obviously played a significant role in the prosecution of [the plaintiff] up through the grand jury proceedings, the Court finds that *Illinois law would not expose an investigator to liability on a malicious prosecution claim when there is no assertion or proof that he in any way misled, deceived, or otherwise concealed facts* from a prosecutor who later instituted criminal proceedings and pursued those criminal charges at trial. It is important to remember that *a malicious prosecution suit against a police officer is an anomaly in itself,* since the principal player in carrying out a prosecution is not the police officer but the prosecutor. [. . .] The fact that the prosecutor enjoys absolute immunity from suit should not, by itself, expose a police officer to greater liability in his place. There is little wonder why *suits for malicious prosecution in Illinois are not favored.*

*Mutual Medical Plans, Inc. v. County of Peoria*, 309 F. Supp. 2d 1067, 1081-82 (C.D. Ill. 2004) (citing *Albright v. Oliver*, 510 U.S. 266, 279 n. 5 (1994); *Joiner v. Benton Community Bank*, 82 Ill. 2d 40 (1980); *Schwartz v. Schwartz*, 366 Ill. 247 (1937); *Shedd v. Patterson*, 302 Ill. 355 (1922)) (emphases added).

Here, Jones alleged that Sergeant Curry caused the commencement of the criminal proceeding. However, Sergeant Curry only effectuated Jones' arrest – the assistant state's attorney was responsible for initiating the criminal proceeding. In addition, the conclusory

allegation that Sergeant Curry gave false testimony thus demonstrating a presence of malice is wholly unsupported by the factual allegations in the complaint. No allegation was made that Sergeant Curry, or any other named defendant, misled, deceived, or otherwise concealed facts from the prosecutor. Therefore, Jones has failed to sufficiently plead a cause of action for malicious prosecution under Illinois law, and Count VI should be dismissed.

**WHEREFORE,** Defendants, VILLAGE OF MAYWOOD, ILLINOIS, TIMOTHY CURRY, S. CORDOBA, R. OCHOA, L. KELLY, K. WEST and UNKNOWN DEFENDANTS, respectfully request that this Honorable Court enter an order granting their Rule 12(b)(6) motion to dismiss Counts II, III, IV, V and VI, and for such further relief deemed equitable and just.

Respectfully submitted,

VILLAGE OF MAYWOOD, ILLINOIS, TIMOTHY CURRY, S. CORDOBA, R. OCHOA, L. KELLY, K. WEST and UNKNOWN DEFENDANTS

By: /s/ Howard C. Jablecki
       One of their attorneys

Lance C. Malina
Allen Wall
Howard C. Jablecki
KLEIN, THORPE AND JENKINS, LTD.
20 North Wacker Drive, Suite 1660
Chicago, Illinois 60606
(312) 984-6400

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANDREA JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08 CV 1741 |
| | ) | Judge Castillo |
| VILLAGE OF MAYWOOD, ILLINOIS, a | ) | Magistrate Judge Ashman |
| municipal corporation, TIMOTHY CURRY, S. | ) | |
| CORDOBA, R. OCHOA, L. KELLY, K. WEST | ) | |
| and UNKNOWN DEFENDANTS, | ) | |
| | ) | |
| Defendants. | ) | |

## STATEMENT OF COMPLIANCE

1. I am the attorney of record for Defendants in this matter.

2. I am responsible for the preparation of Defendants Motion to Dismiss.

3. Pursuant to Judge Castillo's standing orders for motion practice, I provided Plaintiff's counsel with a concise letter summarizing the legal and factual grounds for this motion, with references to supporting authorities prior to filing this motion.

Respectfully submitted,


/s/ Howard C. Jablecki
Howard C. Jablecki
Attorney for Defendants

Lance C. Malina
Allen Wall
Howard C. Jablecki
KLEIN, THORPE AND JENKINS, LTD.
20 North Wacker Drive, Suite 1660
Chicago, Illinois 60606
(312) 984-6400

Westlaw.

Not Reported in F.Supp.2d                                                        Page 1
Not Reported in F.Supp.2d, 2003 WL 1193347 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 1193347 (N.D.Ill.))

**H**
Washington v. Village of Riverside, Illinois
N.D.Ill.,2003.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois, Eastern
Division.
Manuel WASHINGTON and Daniel Parker,
Plaintiffs,
v.
VILLAGE OF RIVERSIDE ILLINOIS, a Municip-
al Corporation, Officer Jeffrey Simpson, Officer
Marcus Yanez, Officer Leo Kotor Jr., Officer Willi-
am Niesluchowski, Sgt. Tom Weitzel, Village of
Lyons Illinois, a Municipal Corporation Officer
John Morelli, Officer Frank Tentonico., Village of
Brookfield Illinois, a Municipal Corporation, Vil-
lage of Berwyn Illinois, a Municipal Corporation,
Defendants.
No. 01 C 7438.

March 13, 2003.

MEMORANDUM OPINION AND ORDER

KEYS, Magistrate J.
*1 Plaintiffs filed suit against Defendants for injur-
ies allegedly suffered during a routine traffic stop,
ensuing high speed chase, and subsequent arrest.
Plaintiffs allege that Defendants used excessive
force in arresting them, battered them, falsely arres-
ted and imprisoned them, and violated their consti-
tutional rights in a multitude of ways. Currently be-
fore the Court are Defendants' Motions for Sum-
mary Judgment. For the reasons set forth below,
Defendants' Motions for Summary Judgment are
Granted.

BACKGROUND FACTS

At approximately 2:00 a.m. on September 3, 2001,
Officer Jeffrey Simpson of the Riverside Police De-
partment pulled over an SUV with tinted windows
that was allegedly speeding. Officer Simpson

stepped out of his vehicle, and shouted to the driver
of the SUV, Plaintiff Manuel Washington, to do the
same. Instead, Mr. Washington simply held both of
his hands and his identification out of the car win-
dow, apparently in an effort to assure Officer
Simpson that he did not have a weapon. The pas-
senger in the SUV, Plaintiff Daniel Parker, also re-
mained in the vehicle. Despite Officer Simpson's
repeated instructions to exit the vehicle, Messrs.
Washington and Parker remained in the SUV. As
Officer Simpson slowly approached the vehicle,
Mr. Washington sped away.

Officer Simpson immediately called for backup on
his radio and began pursuing Mr. Washington's
vehicle. Officer Simpson's radio message was also
picked up by the Lyons Police Department. Shortly
thereafter, a number of police cars, with lights
flashing and sirens sounding, joined Officer
Simpson in his pursuit of Mr. Washington's fleeing
SUV. With several police cars trailing him, Mr.
Washington turned into the parking lot of a White
Castle's restaurant; he was forced to stop when a
police car cut him off, preventing him from exiting
on the opposite side of the parking lot.

Several officers approached the SUV with their
weapons drawn. The officers pulled both Mr.
Washington and Mr. Parker out of the vehicle. Both
men resisted the officers' attempts to restrain and
handcuff them. It took three officers to bring Mr.
Washington, who is 6'5 tall and weighs approxim-
ately 250 pounds, to the ground and handcuff him.
Two officers were able to handcuff Mr. Parker.
Less than one minute elapsed between the time that
the officers removed Plaintiffs from the vehicle and
the time the Plaintiffs were handcuffed. A video-
tape of the arrest does not reveal that any of the of-
ficers choked, kicked, dragged, or used a baton on
either of the men.

Both men were arrested and taken to the booking
room of the Riverside Police Station. Mr. Washing-
ton was released after his bail was paid, but Mr.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex. A



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1193347 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 1193347 (N.D.Ill.))

Parker was detained for several hours, until police confirmed that an outstanding felony warrant had been issued for his twin brother and not for him.

Plaintiffs allege that they incurred substantial damages due to their arrest. Mr. Parker visited Ingalls Memorial Hospital because of injuries to his thumb and other injuries. Notably, while Mr. Parker was in the Riverside Police Station, he claimed that he had injured his thumb while playing basketball. Mr. Parker missed two weeks of work at McDonald's following his arrest, but never informed his employer that he missed work because of injuries received during his arrest.

**\*2** Following his arrest, Mr. Washington complained of pain in his right elbow and on the palm side of his right hand. Mr. Washington received treatment from a Dr. Tucker, at Dr. Tucker's home. Over the last several years, Dr. Tucker has treated fewer than 10 patients, and has seen them all in his home. Despite the rather informal nature of Dr. Tucker's practice, Mr. Washington claims that he incurred $19,800 in medical bills for the massages, muscle manipulation, electrical stimulation, and acupuncture that Dr. Tucker provided. Neither Mr. Washington nor Dr. Tucker were able to produce invoices or documentation supporting these charges. Similarly, although Mr. Washington claims that his business suffered as a result of his injuries, he refused to produce adequate business records to support his claim.

### Procedural History

Plaintiffs filed their Complaint on September 26, 2001. The case was initially assigned to Judge Guzman, and was subsequently referred to this Court for discovery matters. Plaintiffs filed a Motion to Dismiss the Village of Brookfield and Sgt. Tom Weitzel, which was granted on June 7, 2002. On August 27, 2002, the parties consented to proceed before this Court.

During the course of discovery, Defendants had a difficult time getting Plaintiffs to submit to deposition. This Court issued a Minute Order on June 28, 2002, directing Mr. Washington to make himself available for deposition. Defendants subsequently filed a motion for entry of an order to obtain the deposition of Mr. Parker, which was granted on July 24, 2002. On August 9, 2002, defense counsel informed the Court that, despite the Court's June 28th Order, Mr. Washington's deposition had been cancelled, without explanation. Defendants filed a new round of sanctions motions, which were withdrawn when Mr. Washington finally submitted to a deposition approximately one week later.

On November 13, 2002, this Court set the briefing schedule for dispositive motions. The Court ordered Defendants to file their Motions for Summary Judgment by November 22, 2002, and directed Plaintiffs to file their Response to Defendants' Motions for Summary Judgment no later than January 10, 2003. Defendants filed two separate Motions for Summary Judgment; one Motion was filed on behalf of the Village of Riverside, and Officers Simpson, Yanex, Kotor, and Niesluchowski, and a second Motion was filed on behalf of the Village of Lyons and Officers Morelli and Tentonico.[FN1] On January 10th, however, Plaintiffs had not filed a Response Brief, their Rule 56(b) Statement of Fact, or a Motion to Extend Time. Instead, Plaintiffs waited until February 5, 2003-almost 4 weeks after the Response Brief was due-to file the Motion for Extension of Time, and noticed the Motion for presentment on February 12, 2003.

> FN1. Given the absence of a Response Brief and the evidence presented by Defendants, the decision to grant Defendants' Motions for Summary Judgment on all Counts was very straightforward. Therefore, to avoid confusion, the Court will discuss the arguments without identifying which Counts apply to which Defendants.

On February 12, 2003, the Court held a hearing on Plaintiffs' Motion. Plaintiffs' counsel explained that, despite being given 6 weeks to respond to De-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 3
Not Reported in F.Supp.2d, 2003 WL 1193347 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 1193347 (N.D.Ill.))**

fendants' Motions for Summary Judgment, "intervening matters" prevented her from responding in a timely manner, or even asking for an extension prior to Feb. 5, 2003. Counsel claimed that other professional obligations and her inability to confer extensively with her clients-a recurrent roadblock for counselprevented her from meeting the deadline. Counsel offered no reasonable explanation for why she waited approximately 1 month after her response brief was due, and approximately 10 weeks after the Motions for Summary Judgment were filed, to notify the Court and opposing counsel of these problems.

*3 Counsel belatedly requested a 30 to 45 day extension so that she could contact Mr. Washington-who was apparently out of the country-and Mr. Parker-who is incarcerated in the Illinois prison systemin order to obtain affidavits from them to refute affidavits submitted by Defendants. Notably, counsel had not discussed the affidavits with Plaintiffs and could not, therefore, know whether they could refute Defendants' evidence.

Notably, Plaintiffs' counsel did complain that Defendants had "surprised" her by submitting the deposition of eyewitness Sylvia Jurisch, in support of their Motions for Summary Judgment. Counsel argued that the additional time required to appropriately respond to this surprise evidence further warranted granting Plaintiffs' Motion. Plaintiffs' counsel claimed that she had never been notified of Ms. Jurisch's deposition, and first learned of the deposition when she read the Motions for Summary Judgment (which, apparently, was sometime in late January or early February of 2003). Defendants insisted that Plaintiffs' counsel had been notified of the deposition, explaining that they even held up the deposition in anticipation of her arrival (the deposition record reflects as much) and called her twice from the deposition to inquire as to her whereabouts.

Plaintiffs' counsel again denied receiving either notice of the deposition or the phone calls, insisting that she was not made aware of the deposition until she reviewed the Motions for Summary Judgment. Not content to leave well enough alone, Plaintiffs' counsel attacked defense counsels' credibility, attempting to highlight contradictions in defense counsels' claim that Plaintiffs' counsel was properly notified of the deposition.

Following the hearing, Defendants submitted unrefuted affidavits demonstrating that Defendants sent the appropriate notice to Plaintiffs' counsel in a timely manner, that defense counsel, Mr. Miller, contacted Plaintiffs' counsel on the morning of Ms. Jurich's deposition and confirmed that the deposition would be going forward that afternoon, and that defense counsel telephoned Plaintiffs' counsel from Ms. Jurisch's deposition in an attempt to ascertain whether she would be attending the deposition.

Defendants also submitted an affidavit from Ms. Piccolo, a manager with Cuda Reporting Services, who swore that she contacted Plaintiffs' counsel on November 11, 2002, and left her a voicemail message telling her that the deposition transcript from Ms. Jurisch's deposition was available. Ms. Piccolo further avowed that Plaintiffs' counsel called her twice on November 21, 2002, with regard to these transcripts, explaining that her clients were not willing to pay for copies of the transcript. This unrefuted evidence strongly contradicts Plaintiffs' counsel's version of events. Even if the Court were to set aside all of the affidavits filed by defense counsel and their employees, Ms. Piccolo-who is not affiliated with Defendants-establishes that Plaintiffs' counsel was aware of Mr. Jurisch's deposition at least by November 21, 2002.

*4 In a Minute Order dated February 12, 2003, the Court denied Plaintiffs' Motion for the reasons stated in open Court; specifically, that counsel's explanation for the delay was suspect and that it would be prejudicial to Defendants to grant the Motion because counsel waited so long to file the Motion to extend.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 4
Not Reported in F.Supp.2d, 2003 WL 1193347 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 1193347 (N.D.Ill.))

## STANDARD OF REVIEW

The Court will grant summary judgment only if the pleadings and supporting documents show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c) (2002). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Shank v. William R. Hague, Inc.,* 192 F.3d 675, 681 (7th Cir.1999).

The moving party in a motion for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the moving party's burden is met, then the nonmoving party must set forth specific facts showing that there is a genuine issue for trial in order to survive summary judgment. *Schacht v. Wisconsin Dep't of Corrs.,* 175 F.3d 497, 504 (7th Cir.1999).

Pursuant to Local Rule 56.1(a)(3), the party moving for summary judgment must provide a statement of material facts, which asserts that there are no genuine issues of material fact in dispute. The statement must be structured in the form of numbered paragraphs. Loc. R. 56.1(a). The opposing party must respond to each paragraph by either admitting or denying the allegations and specifically citing to supporting materials showing that there is a genuine factual dispute. Loc. R. 56.1(b)(3)(A). The opposing party may file a statement of additional facts that would defeat summary judgment, using the same form of numbered paragraphs with supporting citations. Loc. R. 56.1(b)(3)(B). Finally, the moving party may file a reply to any additional facts submitted by the opposing party. Loc. R. 56.1(a).

In a summary judgment proceeding, the Court will

disregard all facts not properly supported by the record. *Brasic v. Heinemann's Inc.,* 121 F.3d 281, 284 (7th Cir.1997). Once properly supported, "all material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party."Loc. R. 56.1(b)(3)(B). Similarly, all material facts properly supported in the opposing party's Rule 56.1(b)(3)(B) statement "will be deemed admitted unless controverted by the (reply) statement of the moving party."Loc. R. 56.1(a). Failing to support one's statement with a citation to the record is equivalent to an admission of the other party's factual assertions. *Garrison v. Burke,* 165 F.3d 565, 567 (7th Cir.1999).

**\*5** As discussed above, Plaintiffs failed to file a Response Brief to the Motions for Summary Judgment, and failed to file a Rule 56.1 Statement in Response to Defendants' Statements of Material Fact. It is within the Court's discretion to require strict compliance with Local Rule 56.1. *Dade v. Sherwin-Williams Co.,* 128 F.3d 1135, 1140 (7th Cir.1997). The Court finds that Plaintiffs' failure to respond results in their admission of all facts asserted in, and properly supported by, Defendants' Rule 56.1 Statements of Fact.[FN2]

> FN2. Defendants' summary judgment briefs make much of the contradictions between the videotape of Plaintiffs' arrest (which, according to the deposition testimony of eyewitness Ms. Jurisch, accurately depicted the arrest) and Plaintiffs' claims of brutality and taunting. Defendants argue that Plaintiffs cannot raise a genuine issue of material fact regarding excessive force through their deposition testimony, because the videotapes of the arrest contradict their testimony and demonstrate that the force used was not excessive but reasonable. *See McDaniel v. Eaglecare, Inc.,* No. 00-0413, 2002 WL 655691, at *7 (S.D.Ind. Mar. 8, 2002) (finding that a plaintiff's deposition testi-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 5
Not Reported in F.Supp.2d, 2003 WL 1193347 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 1193347 (N.D.Ill.))

mony summarizing her version of a meeting could not create a genuine issue of fact where an audiotape of that meeting was available and contradicted the plaintiff's version of events.) Given Plaintiffs' failure to respond to Defendants' Rule 56 Statement of Fact, however, the material facts are admitted and resolution of Defendants' argument is unnecessary.

Had Plaintiffs made a reasonable attempt to comply, or notified this Court and opposing counsel of the need for extra time to respond in a more timely manner, the Court might have afforded Plaintiffs wider latitude. The Court is also mindful of Plaintiffs' half-hearted participation in the prosecution of this case since its inception, and is not convinced that Plaintiffs would have used a reasonable extension judiciously.

### DISCUSSION

Having determined that Plaintiffs have admitted all of the material facts set forth in Defendants' Rule 56.1 Statement of Material Facts, the Court turns to Defendants' substantive arguments.

I. Counts I and II: Excessive Force

Defendants argue that the Court should grant their Motions for Summary Judgment with regard to Plaintiffs' excessive force claim, because unimpeached objective evidence demonstrates that the force used was reasonable under the circumstances.

The Seventh Circuit has identified the "objective reasonableness" test as the standard for determining whether an officer used excessive force during an arrest. *Smith v. City of Chicago*, 242 F.3d 737, 743 (7th Cir.20 01). The Court must examine all of the facts and circumstances, from the perspective of the arresting officer, in determining whether the officer's actions were objectively reasonable. *Id.* Specifically, the Court considers " 'the severity of the crime at issue, whether the suspect pose[d] an im-

mediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." ' *Id.* quoting *Graham v. Con nor*, 4 90 U.S. 386, 396 (1989). In addition, courts must allow for "the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397.

Although an arrest following the typical traffic stop does not usually warrant the use of force, a driver's decision to flee may justify an officer's subsequent use of force to arrest the driver. For example in *Cavazos v. Voorhies*, No. 00 7929, 2002 WL 31017492 (N.D.Ill. Sept. 9,2002), the court found that it was both reasonable for the arresting officer to believe that the driver was attempting to flee and that a higher degree of force was required in arresting the driver to protect the community. *Id.* at *2 (although the forced the officer used when arresting the plaintiff was justified by the plaintiff's flight and erratic behavior, the force the officer used when later transporting the plaintiff, who by that time was cooperative, was arguably not reason- able.)

*6 In a document titled "Statement of Events," Mr. Washington claims that, during his arrest, the police choked him, forcibly pulled his legs apart as if to break a wishbone, pulled his neck and head back, dragged him and tried to smash his head into a police car in the White Castle's parking lot. Defendants direct the Court's attention to a videotape that recorded much of the arrest and subsequent detention. The videotape of the arrest contradicts Ms. Washington's assertions.[FN3]

> FN3. Ms. Sylvia Jurisch, who witnessed the arrests, testified at her deposition that the videotape presented to the Court accurately represents Plaintiffs' arrest.

While the video reveals that the arresting officers did use force in apprehending Plaintiffs, the Court

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1193347 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 1193347 (N.D.Ill.))

agrees with Defendants' assertion-and Plaintiffs' ad-mission-that the force used was reasonable, given the circumstances in this case. Plaintiffs fled from the scene when a uniformed officer pulled them over for a traffic violation and demanded that they exit the vehicle. Several police cars, with sirens and lights activated, chased Plaintiffs' vehicle, yet Plaintiffs refused to pull over. Plaintiffs stopped their vehicle in a White Castle parking lot only when a police car pulled in front of it, blocking Plaintiffs' exit. Even after an officer pulled him from the car, a reasonable person could conclude that Mr. Washington was resisting the officers' at-tempt to handcuff him. Once the officers were able to subdue Mr. Washington and handcuff him, the level of physicality dropped dramatically. The en-tire arrest lasted less than one minute.

Similarly, the videotape of Mr. Parker's arrest re-veals that the force used was warranted by the cir-cumstances. At no time did any officer use force that was unrelated to arresting the men, and as soon as Mr. Parker was handcuffed, the officers relented.

Under these circumstances, and in light of Plaintiffs' admissions, the Court finds that, as a matter of law, the degree of force used was reason-able and justified. Therefore, the Court grants De-fendants' Motions for Summary Judgment on Plaintiffs' excessive force claims.

## II. COUNTS III AND IV: FAILURE TO PRE-VENT THE UNJUSTIFIED USE OF FORCE

In order to sustain a failure to intervene claim under § 1983, the officer "must have reason to know 1)that excessive force was being used, 2) that a cit-izen has been unjustifiably arrested,[FN4] or 3) that any unconstitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene and prevent the harm from occurring."*Dawn v. Black,* No. 99 C 50386, 2003 WL 164244, at *2 (N.D.Ill. Jan. 23, 2003). Thus, there must at least be a genuine issue of material fact with regard to whether the forced

used was unjustified. *Colone v. Burge,* No. 00 C 9008, 2002 WL 31628205, at *6 (N.D.Ill. Nov. 21, 2002). An officer cannot be held liable for prevent-ing the unjustified use of force, if it is determined that the use of force was justified. *Id.* Because the Court has granted Defendants' Motion for Summary Judgment on Plaintiffs' excessive force claim, the failure to intervene claims must fail as well. *Id.*

> FN4. The Court also finds, as is discussed more extensively below, that summary judgment on Plaintiffs' false arrest/ imprisonment claim is also appropriate.

## III. COUNT V: EQUAL PROTECTION CLAIMS

*7 Plaintiffs allege that the decision to initially stop and subsequently arrest them was based upon their race, in violation of the Equal Protection Clause. Defendants' conduct would violate the Equal Pro-tection Clause if the decision to stop and arrest Plaintiffs had a discriminatory effect and was mo-tivated by a discriminatory purpose. *Chavez v. Illinois State Police,* 251 F.3d 612, 635-36 (7th Cir.2001).

Plaintiffs can demonstrate discriminatory effect if they are members of a protected class, they are oth-erwise similarly situated to persons outside the pro-tected class, and they were treated differently from those persons outside the protected class. *Id.* at 636.In support of their claim that they were treated differently because of their race, Plaintiffs must submit evidence such as statistics establishing dif-ferentiation or identify individuals outside of the protected class who were treated differently in sim-ilar circumstances.*Id.* at 636-38 Plaintiffs have failed to present any evidence whatsoever tending to show that they were treated differently than sim-ilarly situated non-African Americans. Therefore, Plaintiffs' equal protection claims fails.

## IV. COUNT VI: SECTION 1985(3) CLAIM FOR CIVIL CONSPIRACY

Plaintiffs further allege that the decision to stop

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1193347 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 1193347 (N.D.Ill.))

Page 7

their vehicle and to subsequently arrest them was part of a conspiracy to discriminate against them because of their race. To establish a § 1985(3) civil conspiracy claim, Plaintiffs must demonstrate: 1) an express or implied agreement to deprive Plaintiffs of their constitutional rights; and 2) an overt act in furtherance of the agreement to deprive Plaintiffs of those rights. *Scherer v. Balkema,* 840 F.2d 437, 442 (7th Cir.1988). Because Plaintiffs allege that the conspiracy was motivated by their race, proof of racial animus is also required. *Copeland v. Northwestern Memorial Hosp.,* 964 F.Supp. 1225, 1234-35 (N.D.Ill.1997) (proof of racial animus is required only for causes of action, like this one, that arise under the first part of § 1985.) Plaintiffs cannot rely on the fact that Defendants were aware that they were African Americans to establish this motivation. Rather, Plaintiffs must plead "with some particularity facts sufficient to show an agreement between the parties to inflict the alleged wrong."*Frymire v. Peat, Marwick, Mitchell & Co.,* 657 F.Supp. 889, 896 (N.D.Ill.1987).

In this case, Plaintiffs have offered no evidence that the officers pursuing and arresting them participated in a conspiracy motivated by their aversion to Plaintiffs' race. Other than Officer Simpson, the officer who initially stopped Plaintiffs' vehicle, none of the other officers even knew that Plaintiffs were African Americans. The tape recording of Officer Simpson's radio call requesting additional assistance never mentioned Plaintiffs' race.

Even if the Court were to assume that Officer Simpson stopped Plaintiffs' vehicle because they were African Americans-despite the lack of evidence that Officer Simpson was motivated by such racial animus-there is no evidence that any of the other Defendants shared the same conspiratorial objective. *Moss v. Perkins,* 682 F.Supp. 395, 396 (N.D.Ill.1988) (Section 1985(3) claim fails absent evidence that each defendant knew the nature and scope of a single plan to discriminate.) The recorded communications between the officers indicate only an intention to apprehend individuals fleeing a traffic stop.

*8 Moreover, the time between the initial stop and the subsequent arrest spanned only a few minutes. Given the short sequence of events, it is unlikely that there was even time to formulate an agreement between officers of different policing organizations to deprive Plaintiffs of their constitutional rights. Defendants' Motions for Summary Judgment are granted.

## V. COUNTS VII-X: *MONELL* POLICY/FAILURE TO TRAIN CLAIMS

Under the Supreme Court's decision in *Monell v. Dept. of Social Servs.,* 436 U.S. 658, 690-91 (1978), a local government unit is liable for the conduct of its employees if the execution of the local government's "official policy" resulted in the deprivation of a constitutionally protected right. A municipality's failure to train its police officers gives rise to *Monell* liability only when the failure to train amounts to "deliberate indifference to the constitutional rights of its inhabitants."*City of Canton, Ohio v. Harris,* 489 U.S. 378, 389 (1989). Plaintiffs must also demonstrate that the Villages of Riverside and Lyons (the "Villages") had notice that the omission would likely result in a constitutional violation. *Palmquist v. Selvik,* 111 F.3d 1332, 1344 (7th Cir.1997); *Hirsch v. Burke,* 40 F.3d 900, 904 (7th Cir.1994) (noting that a plaintiff must "show that the defendants were on notice of a pattern of constitutional violations resulting from the inadequate training.")

Plaintiffs' claims that the Villages fostered an atmosphere which encouraged-or even permitted-Plaintiffs' constitutional rights to be violated fails, because: 1) there is no evidence that Plaintiffs' constitutional rights were violated; and 2) there is no evidence that the Villages had policies or customs encouraging their officers to violate the constitutional rights of others.

Despite the fact that the Villages produced copies

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 8
Not Reported in F.Supp.2d, 2003 WL 1193347 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 2003 WL 1193347 (N.D.Ill.))

of their Police Department Policies and Procedures Manuals, Plaintiffs did not conduct any depositions concerning these manuals, and did not disclose any expert or opinion witnesses to testify about the inadequacies of the manuals. Plaintiffs' boilerplate "failure to train" allegations in their Complaint are insufficient to survive Defendants' Motion for Summary Judgment.

## VI. COUNTS XI-XIV: STATE LAW BATTERY CLAIMS

Under Illinois law, a battery occurs when a defendant touches or causes bodily harm to the plaintiff without legal justification. 720 ILCS 5/12-3(a) (West 2003). The Tort Immunity Act immunizes public employees from liability while enforcing the law, unless their acts are willful and wanton. 745 ILCS 10/2-202 (West 2003). Because the Court has already determined that the force that Defendants utilized in arresting Plaintiffs was reasonable and justified, Plaintiffs' state law battery claims must fail.

## VII. COUNTS XV-XVIII: FALSE ARREST/ IMPRISONMENT

The Seventh Circuit has held that the existence of probable cause for an arrest is an absolute bar to a § 1983 claim for false arrest, false imprisonment, or malicious prosecution. *Jones v. Webb,* 45 F.3d 178, 183 (7th Cir.1995). Probable cause exists when "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91 (1964).*See also, Booker v. Ward,* 94 F.3d 1052, 1057 (7th Cir.1996).

*9 In this case, Mr. Washington admits that he was speeding, refused to exit his vehicle when directed to do so by Officer Simpson, and then fled the scene. Even if Plaintiffs had filed a Response Brief, it is difficult to envision a reasonable challenge to

Defendants' claim that they had probable cause to arrest Plaintiffs. Because Defendants had probable cause to arrest Plaintiffs, Plaintiffs' false imprisonment claims must fail. *Sheik-Abdi v. McClellan,* 37 F.3d 1240, 1247 (7th Cir.1994)

## VIII. COUNT XIX: STATE LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In order to succeed on a claim of intentional infliction of emotional distress, Plaintiffs must demonstrate that: 1) Defendants' conduct was extreme and outrageous; 2) Defendants either intended that their conduct should inflict severe emotional distress or knew that there was a high probability that their conduct would cause severe emotional distress; and 3) Defendants' conduct did in fact cause severe emotional distress. *Doe v. Calumet City,* 161 Ill.2d 374, 392, 641 N.E.2d 498, 506 (Ill.1994); *Oates v. Discovery Zone,* 116 F.3d 1161, 1174 (7th Cir.1997).

Plaintiffs allege that they suffered severe emotional distress as a result of the arresting officers' behavior in the White Castles' parking lot, claiming that the officers used racial slurs while arresting them, compared choke holds, and laughed at Plaintiffs. Defendants present a persuasive argument that, even if the officers used racial slurs (and Defendants insist that they did not), these mere insults and indignities are insufficient to satisfy *Doe's* "Outrageous!" test. *Doe,* 641 N.E.2d at 507 ("mere insults, indignities, threats" etc are insufficient to support an IIED claim .) In addition, Plaintiffs have presented paltry evidence that they actually experienced severe emotional distress. Therefore, Defendants' Motion for Summary Judgment is Granted.

Having granted Defendants' Motions for Summary Judgment on all counts of Plaintiffs' Amended Complaint, there is no need to discuss Defendants' arguments regarding Plaintiffs' damages estimates and evidence.

## CONCLUSION

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 1193347 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 1193347 (N.D.Ill.))**

Plaintiffs claim that Defendants acted improperly when they stopped, pursued, and arrested Plaintiffs during the early morning hours of September 3, 2001. Plaintiffs' version of events, however, is not supported by the videotapes and audiotapes of those incidents, and is contradicted by eyewitness testimony. Plaintiffs' position is further compromised by their failure to submit a Response and Rule 56.1 Response to Defendants' Statements of Material Fact. The failure to submit these filings resulted in the Court's ruling that Plaintiffs have admitted all material facts properly set forth by Defendants in their Rule 56 Statements of Fact. For the foregoing reasons, the Court denies Plaintiff's motions and grants the Commissioner's Motion for Summary Judgment.

IT IS HEREBY ORDERED that Defendants' Motions for Summary Judgment be, and the same hereby are, GRANTED.

N.D.Ill.,2003.
Washington v. Village of Riverside, Illinois
Not Reported in F.Supp.2d, 2003 WL 1193347 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## Westlaw.

Not Reported in F.Supp.                                                                                                    Page 1
Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.))

**H**
Carr v. Village of Richmond
N.D.Ill.,1996.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Western
Division.
Marcine CARR and Richard Carr, Plaintiffs,
v.
VILLAGE OF RICHMOND, a municipal corpora-
tion, Officer Anthony Brisinte, Deputy Craig Ford,
Sheriff of McHenry County, Lynn Scarbrough, J.
Bender[FN1], Natalia Dejneka, Northern Illinois
Medical Center, Chief Kevin L. Bays, Daniel A.
Bitton, D.B. Aviation, Inc., and Airborne Law En-
forcement Services, Inc., Defendants.

> FN1. Although the amended complaint
> names Benders, the motion to dismiss as to
> this defendant refers to her as Bender and
> plaintiffs' response adopts that version of
> her name. Therefore, the court will refer to
> her as Bender.

**No. 96 C 50203.**

Nov. 15, 1996.

Jill A. Friedman, Edward T. Stein, Mary Lou Boel-
cke, Law Offices of Edward T. Stein, Chicago, IL,
for plaintiffs.
Stuart D. Gordon, Maureen T. Murphy, Zukowski,
Rogers, Flood & McArdle, Chicago, IL, James T.
Harrison, David M. Ososky, Harrison Law Offices,
P.C., Woodstock, IL, Jeffry S. Spears, Hinshaw &
Culbertson, Rockford, IL, John S. Hoff, Brandt R.
Madsen, Molly A. Horrigan, Law Offices of John
S. Hoff, P.C., Chicago, IL, for defendants.

### *MEMORANDUM OPINION AND ORDER*

REINHARD, District Judge.

### INTRODUCTION

*1 Plaintiffs, Marcine Carr and Richard Carr, filed
an eighteen-count, amended complaint against de-
fendants, the Village of Richmond, Illinois, An-
thony Brisinte (individually), a police officer of the
village, Craig Ford (individually), a deputy of the
Sheriff's Police of McHenry County, the Sheriff of
McHenry County, Lynn Scarbrough, a nurse em-
ployed by the Northern Illinois Medical Center
(NIMC), J. Bender, a nurse employed by NIMC,
Natalia Dejneka, a doctor at NIMC, NIMC, Kevin
L. Bays, the chief of police for the village, Daniel
A. Bitton (individually as a police officer of the vil-
lage and as an officer and employee of D.B. Avi-
ation, Inc. and Airborne Law Enforcement Ser-
vices, Inc. (ALES)), D.B. Aviation, Inc., and
ALES. Plaintiffs' claims arise under 42 U.S.C. §
1983 and state law. Jurisdiction is premised on 28
U.S.C. §§ 1331(a), 1343(a)(3) and 1367. Venue is
proper here as a substantial part of the complained
of acts arose in this division and district.[FN2] Var i-
ous defendants have filed motions to dismiss cer-
tain counts of the amended complaint.[FN3]

> FN2. This case was originally filed in the
> Eastern Division of the Northern District
> of Illinois. Judge Manning granted various
> defendants' motions to transfer venue and
> transferred this case to the Western Divi-
> sion on June 4, 1996.

> FN3. All defendants, except NIMC, Bend-
> ers, Scarbrough and Dejneka, filed motions
> to sever in combination with their motions
> to transfer venue. Judge Manning only
> ruled on the motions to transfer, and the
> motions to sever remain pending. The
> court will dispose of the motions to sever
> as part of this order.

### FACTS

The following facts are taken from the amended
complaint. Plaintiffs were married to one another
and resided at 5709 George Street in Richmond
during all times relevant to their claims. On or
about December 13, 1993, at about 12:15 a.m.,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex. B



Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.))

plaintiffs were at their home with friends. At about 12:19 a.m., Marcine Carr called 911 for assistance. Brisinte and Ford were dispatched to the Carrs' residence. They were informed by the dispatcher of a verbal dispute at the residence. The sheriff's office telephoned the Carrs' home to let them know the officers were enroute.

When Brisinte arrived at the Carrs' home, Richard Carr answered the door. Brisinte rushed past Richard Carr, uninvited, and into the house. At the time Brisinte entered the house, the need for assistance had ended.

While in the home, Marcine Carr and Brisinte exchanged words. Brisinte arrested her and handcuffed her behind her back. She voluntarily submitted to the arrest. In the presence of Richard Carr and their friends, Brisinte swung Marcine Carr into the fireplace twice. He then pushed her to the front door and through the screen door. Once outside, he slammed her into the front porch wall. She did not have any shoes, socks or jacket on when she was arrested and removed from her house.

After slamming Marcine Carr into the front porch wall, Brisinte pushed her to Ford who held her against a wall. Brisinte then pulled Marcine Carr by her hair and snapped her head back at which time she heard a loud noise. Brisinte also dragged her down the porch stairs by her hair and pulled her toward the squad car in a headlock. Brisinte and Ford then slammed her against the trunk of the squad car, grabbed her ponytail and threw her into the squad car. Brisinte entered the vehicle and began driving it so fast that Marcine Carr was wedged against the door when the vehicle went around turns.

Marcine Carr was extremely frightened during the entire incident, believed she was seriously injured and that her neck was damaged, and she repeatedly asked for a doctor. She was transported to NIMC, arriving at about 1:40 a.m. on December 13. At about 2:55 a.m., Bender and Scarbrough, both nurses at NIMC, "insisted they must draw blood"

from Marcine Carr. After Marcine Carr told them not to draw blood, they began to yell at her. Marcine Carr refused to permit her blood to be drawn, and Dejneka "grabbed [her] arm and drew her blood against her wishes."

*2 As a result of the force used in arresting Marcine Carr, she suffered serious bodily injuries, including severe back and neck injuries, had the wind knocked out of her and briefly lost consciousness. She remained in the hospital until December 15, 1993.

At the time of her arrest, Marcine Carr was charged with disorderly conduct. On January 19, 1994, she was indicted for aggravated battery, disorderly conduct and resisting a peace officer. The state court, during her jury trial, entered a directed verdict in favor of Marcine Carr on August 25, 1994 on the disorderly conduct charge. On August 26, 1994, a jury found her not guilty of aggravated battery and resisting a peace officer.

On January 31, 1994, between 9:00 p.m. and 9:15 p.m., Marcine Carr was home with her daughter. While in the house, they heard noise that became "louder and louder" and which Marcine Carr recognized as the sound of a helicopter. The windows of the house were shaking, and Marcine Carr moved herself and her daughter to the center of the room. The noise from the helicopter continued getting louder, and lights began blinking and shining through the windows. Marcine Carr then ran to the back of her house where she saw a helicopter hovering over the back porch. When she stepped outside to see if there was identification on the helicopter, a bright light was shone on her. She then ran back inside and covered herself and her daughter with a blanket and pillows because she feared the windows would implode. Due to the vibrations caused by the helicopter, several items fell off shelves and tables in Marcine Carr's home and broke.

The helicopter hovered over the back porch for approximately ten minutes. It was flying at an altitude

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.))

Page 3

of no more than 100 feet or approximately tree top level. Because the house is in a populated, residential area, there was no place near the house where the helicopter could safely land. Items in at least one neighbor's home were also rattling and vibrating during the incident. Bitton, the pilot of the helicopter, was also an officer of the village's police department and was under the direction of Bays, the chief of police, who, along with another individual, was a passenger in the helicopter.

Marcine Carr and several neighbors wrote letters to the Federal Aviation Administration (FAA) complaining of the incident. Statements from the neighbors submitted to the FAA included that the helicopter was hovering directly over the Carr house at tree top level and that the incident terrified one of the neighbor's four and five-year-old boys. The FAA conducted an investigation in which they interviewed the complainants and occupants of the helicopter. The three occupants, including Bays and Bitton, also submitted written statements to the FAA.

Although Bays did not know who complained to the FAA, he stated in his written statement to the FAA that:

I advised [FAA] Inspector Law that if the complainant was Marcine Carr ... that it was very important for him to know some background on her. Marcine Carr was arrested by the Richmond Police Department on December 13, 1993, following Violent Domestic and was subsequently indited [sic] by the McHenry County States Attorneys [sic] Office and the Richmond Police Department. She has stated to several people in Richmond that the Richmond Police Department was going to pay for her arrest in what ever way she can make them pay.

*3 *** [H]er husband approached the squad [on December 13, 1993] and stated he was going to sue the Richmond Police Department.

*** So as you can see Marcine Carr knows these officers [Brisinte and Bitton] and would like noth-

ing better than see them hang. *** I feel that if Marcine Carr is the complainant the allegations are false. (Brackets in original.)

Following the FAA's investigation, the FAA took final administrative action against Bitton and issued him a warning letter for "'operating at less than the minimum safe altitude in a careless manner ... contrary to the Federal Aviation Regulations.'" Bitton's actions violated 14 C.F.R. §§ 091.119(a), 091.119(d) and 091.13(a).

The Carrs filed this lawsuit on December 9, 1994. They eventually filed an amended eighteen-count complaint alleging the following: (1) excessive force against Marcine Carr by Brisinte and Ford under the Fourth and Fourteenth Amendments (Count I); (2) unlawful seizure of Marcine Carr by Brisinte and Ford in violation of the Fourth and Fourteenth Amendments (Count II); (3) malicious prosecution of Marcine Carr by Brisinte in violation of the Fourth Amendment (Count III); (4) a state law claim of assault and battery against Brisinte, Ford, the village and the sheriff (Count IV); (5) a state law claim for false arrest and malicious prosecution against Brisinte and the village (Count V); (6) a state law claim for intentional infliction of emotional distress against Brisinte, Ford, the village and the sheriff based on the facts surrounding her arrest (Count VI); (7) a state law claim for intentional infliction of emotional distress by Richard Carr against Brisinte, Ford, the village and the sheriff based on the facts surrounding Marcine Carrs arrest (Count VII); (8) a state law loss of consortium claim by Richard Carr against Brisinte, Ford, the village and the sheriff (Count VIII); (9) a state law claim by both the Carrs for trespass against Brisinte and the village based on Brisinte's entry onto their property and into their home on December 13, 1993 (Count IX); (10) a state law claim for assault and battery by Marcine Carr against NIMC, Dejneka, Bender and Scarbrough based on the drawing of blood against her will (Count X); (11) a state law claim for intentional infliction of emotional distress by Marcine Carr against NIMC, Dejneka, Bender

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                    Page 4
Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.))

and Scarbrough (Count XI); (12) a claim by Marcine Carr of denial of the right of access to the courts in violation of the First and Fourteenth Amendments against Bitton and Bays arising out of the helicopter incident (Count XII); (13) a claim by Marcine Carr against Bitton and Bays for an invasion of privacy in violation of the Fourteenth Amendment (Count XIII); (14) a claim by Marcine Carr against Bitton and Bays of an unlawful search and seizure under the Fourth Amendment (Count XIV); (15) a claim by Marcine Carr against Bitton and Bays of a denial of due process under the Fourteenth Amendment (Count XV); (16) a claim by Marcine Carr against Bitton, Bays and Brisinte for conspiracy to interfere with her civil rights (Count XVI); (17) a state law intentional infliction of emotional distress claim by Marcine Carr against the village, Bitton, D.B. Aviation and ALES based on the helicopter incident (Count XVII); and (18) a state law claim by Marcine Carr against the village, Bitton, D.B. Aviation and ALES for trespass based on the helicopter incident (Count XVIII).

## DISCUSSION

*4 The various defendants have moved to dismiss certain counts of the amended complaint directed at them. In that regard they have raised various contentions in support of their motions to dismiss. The court will address those contentions and plaintiffs' responses thereto as it decides the motions of each of the defendants. In considering the motions to dismiss, the court must accept as true the well-pleaded factual allegations of the amended complaint and draw all reasonable references favorably to plaintiffs. *See Colfax Corp. v. Illinois State Toll Highway Auth.,* 79 F.3d 631, 632 (7th Cir. 1996). The court will only dismiss a claim if it appears beyond doubt that plaintiffs can prove no set of facts that would entitlement them to relief thereon. *Id.*

I.) *Motion to dismiss Counts X and XI by NIMC, Dejneka, Bender & Scarbrough*

These defendants seek to dismiss Counts X and XI, contending first that there is no jurisdictional bases for these state law claims because they do not arise out of the federal civil rights claims against the co-defendants; second that plaintiffs have failed to comply with the state law requirement of an affidavit and reviewing physician's report; third that plaintiffs have failed to sufficiently allege any basis for the state law claim; and fourth that the request for punitive damages should be stricken because under Illinois law such damages are unavailable against healthcare providers.[FN4]

> FN4. Plaintiffs concede in their response brief that punitive damages are not available against these defendants, therefore, the court grants the motion to strike the request for punitive damages.

### A.) *Supplemental jurisdiction*

This court's jurisdiction over the state law claims is governed by 28 U.S.C. § 1367. *See Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294, 1298 (7th Cir. 1995).Section 1367 codifies the case law doctrines of pendent and ancillary jurisdiction. *Id.* Additionally, section 1367 includes pendent party claims in the concept of supplemental jurisdiction.*Id.* at 1298-99.

The language of section 1367 clearly authorizes the district court to exercise jurisdiction over supplemental claims to the full extent of Article III's "case or controversy" requirement. *Id.* at 1299.Although the statute grants the full extent of Article III's jurisdiction to the district court, it does not explicitly define the outer limits of that constitutional limitation in jurisdiction. *Id.* In that regard, the Seventh Circuit has described this limitation as being that the judicial power to hear both state and federal claims exists where the federal claim has sufficient substance to confer subject matter jurisdiction on the court and the state and federal claims derive from a common nucleus of operative facts. *Id.* (citing *Ammerman v. Sween,* 54 F.3d 423, 424 (7th Cir. 1995)). A loose factual connection between the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.))

claims is generally sufficient. *Id.*

In the present case, there is at the very least a loose factual connection between the claims directed at the NIMC defendants and the federal claims brought against the officers. According to the allegations of the amended complaint, Marcine Carr was severely injured at the hands of the arresting officer or officers. As a result, she was taken to NIMC where Bender, Scarbrough and Dejneka were involved in treating her. The state claims against them arise out of that treatment. There is a sufficient factual nexus between the federal and state claims to satisfy the requirements of section 1367. Therefore, the motion to dismiss is denied on that basis.

**B.)** *Failure to comply with 735 ILCS 5/2-622*

*5 These defendants originally moved to dismiss Counts X and XI because plaintiffs did not file an attorney affidavit and reviewing physician's report as required by section 2-622 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-622, arguing that Marcine Carr's claims triggered section 2-622 because they were claims against a healthcare provider. Plaintiffs, in turn, filed their attorney's affidavit and a reviewing physician's report which the NIMC defendants moved to strike as not complying with section 2-622. Pursuant to leave of court, plaintiffs filed an amended attorney affidavit and reviewing physician's report. The NIMC defendants have moved to strike these latter documents and continue to press their motion to dismiss because of plaintiffs' noncompliance with section 2-622. However, these defendants now limit their attack on this basis to the intentional infliction of emotional distress claim in Count XI.

The court will not engage in any unnecessary discussion of whether section 2-622 applies to the intentional infliction of emotional stress claim based on the NIMC defendants' treatment of her as plaintiffs have not argued otherwise.[FN5] In fact, in their response to these defendants' motion to dis-

miss, they are silent as to the need for an affidavit and physician's report in regard to the intentional infliction of emotional distress claim even though they do address the need for such documents to support the assault and battery claim in Count X. Moreover, the amended affidavit and physician's report that they ultimately submitted are also silent as to the intentional infliction of emotional distress claim. Under these circumstances, the court dismisses Count XI for failure to comply with section 2-622.[FN6] The dismissal is with prejudice because plaintiffs have had numerous bites at the apple but have failed to substantiate their claim in Count XI as required by section 2-622. [FN7]

> FN5. Because plaintiffs have also not raised the issue of whether section 2-622 has any applicability to the intentional torts of intentional infliction of emotional distress, assault, and battery, the court will not make that threshold determination. Nonetheless, it should be noted that it is questionable whether section 20622 applies to intentional torts. *See Doe v. City of Chicago,* 883 F. Supp. 1126, 1134 (N.D. Ill. 1994); *Moskowitz v. City of Chicago,* No. 93 C 1335, 1993 WL 478938, at *6-7 (N.D. Ill. Nov. 16, 1993).

> FN6. Section 2-622 applies to state law claims brought in federal court. *See Doe v. City of Chicag o,* 8 83 F. Supp. 1126, 1134 (N.D. Ill. 1994).

> FN7. Even if the court were to deny the motion to dismiss on this basis, it would nonetheless dismiss Count XI for failure to state a claim. It cannot be said that the act of forcing Marcine Carr to submit to a blood test in a hospital emergency room, without more, was so extreme and outrageous as to support a claim for intentional infliction of emotional distress. While such conduct could conceivably rise to the level of extreme and outrageous conduct under certain circumstances, it does not do

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.))

so as alleged here.

As for the assault and battery claims in Count X, defendants do not contend in their brief in support of the motion to strike the amended affidavit and physician's report that those documents are insufficient as to the claims in Count X. Thus, the court considers defendants to have abandoned their section 2-622 argument as it relates to the assault and battery claims. This apparent abandonment is astute as the amended affidavit and physician's report comply with section 2-622 as to the assault and battery claims.

### C.) *Assault and battery claims (Count X)*

Defendants Bender and Scarbrough contend, alternatively, that Count X does not state a claim for assault and battery against them because there is no allegation of any physical contact by them. Plaintiffs respond that Count X does state a claim for assault and battery because assault does not require an actual physical touching under Illinois law. The problem with these contentions is that neither accurately reflects the law in Illinois as to the separate torts of assault and battery.

\*6 Illinois defines assault as an intentional, unlawful offer of corporal injury by force, or force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented. *Ratnasway v. Air Afrique,* No. 95 C 7670, 1996 WL 507267, at \*9 (N.D. Ill. Sept. 4, 1996) (citing *Parrish v. Donahue,* 110 Ill. App. 3d 1081, 443 N.E.2d 786 (2d Dist. 1982)). Battery, on the other hand, is defined as the wilful, unconsented touching of another person. *Pechan v. Dynapro, Inc.,* 251 Ill. App. 3d 1072, 622 N.E.2d 108, 117 (2d Dist. 1993).

Because there are no allegations that either Scarbrough or Bender touched Marcine Carr in regard to drawing her blood, Count X fails to state a claim for battery and is dismissed in that respect as to

these two defendants. As for the separate tort of assault, the allegations state that Bender and Scarbrough "insisted they must draw blood from" Marcine Carr and after she told them not to draw blood "they began to yell at her." Additionally, Count X alleges that Dejneka, Bender and Scarbrough "put [Marcine Carr] in imminent fear of the safety of her person by drawing blood from [Marcine Carr] against her will and such actions constitute assault ...." Although these allegations are less than ideal, they are sufficient under federal notice pleading standards to state a claim for an assault against Marcine Carr by Bender and Scarbrough. Therefore, the motion to dismiss Count X as to the claim for assault by Bender and Scarbrough is denied.

### II.) *Motion to dismiss Counts II, VI and VII*

Count II alleges that Ford violated Marcine Carr's Fourth Amendment rights when he participated in her unlawful seizure. Count VI alleges that Ford's conduct in arresting Marcine Carr constituted intentional infliction of emotional distress as to Marcine Carr. Count VII, brought on behalf of Richard Carr, alleges that Ford's actions in arresting Marcine Carr constituted intentional infliction of emotional distress as to Richard Carr. Plaintiffs seek damages from the sheriff in Counts VI and VII based on a theory of respondeat superior as Ford was a deputy employed by the sheriff's office.[FN8]

> FN8. While the sheriff has also moved to dismiss Count II, there are no allegations against the sheriff in that count, nor does Count II name the sheriff as a defendant in its heading. Therefore, the court will only consider Ford's motion to dismiss as to Count II.

### A.) *Unlawful arrest (Count II)*

Ford contends that Count II fails to set forth a claim for an unlawful arrest under the Fourth Amendment because there are no allegations that Ford lacked probable cause for the arrest. Alternatively, he ar-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                              Page 7
Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.))

gues that Marcine Carr was already under arrest by the time he arrived and that he played only a minimal part in her arrest by assisting in placing her in the squad car.

Plaintiffs respond first that based on the allegations in the amended complaint Ford did not have probable cause to arrest Marcine Carr. Second, they contend that Ford was involved in her arrest as it is alleged that Ford detained her on the front porch and assisted in placing her into the squad car and that the Fourth Amendment applies to procedures incident to the arrest.

*7 While it is true that probable cause precludes a section 1983 claim for unlawful arrest, *see Sheik-Abdi v. McClellan,* 37 F.3d 1240, 1247 (7th Cir. 1994), and, hence, a plaintiff must allege a lack of probable cause to plead such a claim, it is not necessary that he incant the magic words "lack of probable cause" under federal notice pleading standards. Here, plaintiffs have not explicitly alleged that Marcine Carr was arrested without probable cause. Nonetheless, the clear import of the allegations is that she was not. At the very least, the allegations are sufficient to put Ford on notice that the claim in Count II is based on a lack of probable cause and, hence, an unlawful arrest.

The next contention raised by Ford is that Ford was not involved in the arrest of Marcine Carr and thus cannot be liable for an unlawful arrest under the Fourth Amendment. While it is not entirely clear when an arrest ends such that the Fourth Amendment no longer applies, *see Garcia v. City of Chicago,* 24 F.3d 966, 970 n.6 (7th Cir. 1994), under the facts alleged here the arrest was still ongoing at the time Ford became involved. Wherever the outer limits of an arrest might be, it was not reached under these alleged facts. Brisinte was in the process of arresting Marcine Carr when Ford arrived, and Ford participated by holding her against a wall and by helping place her in the squad car. It cannot be said that as a matter of law Ford did not participate in Marcine Carr's arrest. While Ford's involvement may prove to have been minimal, that is a factual

matter to be determined later. Accordingly, Ford's motion to dismiss Count II is denied.

### B.)*Intentional infliction of emotional distress (Counts VI and VII)*

In order to state a cause of action under Illinois law for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew there was a high probability that his conduct would cause severe emotional distress; and (3) the defendant's conduct in fact caused severe emotional distress. *Doe v. Calumet City,* 161 Ill. 2d 374, 641 N.E.2d 498, 506 (7th Cir. 1994). Conduct is extreme and outrageous where "'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "outrageous!"'" *Id.* (quoting Restatement (Second) of Torts § 46, Comment d, at 73 (1965)). Such conduct, however, must be differentiated from the mere insults, indignities, threats, annoyances, petty oppressions or other trivialities that are part of the costs of complex society from which the law provides no protection. *Id.* Whether particular conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of a particular case. *Id.*

Furthermore, extreme and outrageous conduct can arise from the abuse of a position of power. *Doe,* 641 N.E.2d at 507. In that regard, the Restatement (Second) of Torts includes police officers as one of the the types of individuals who, in exercising their authority, can become liable for extreme abuses of their positions. *Id.* (citing Restatement (Second) of Torts § 46, Comment e, at 74 (1965)). While all conduct is not immunized, more latitude is given to a defendant pursuing his legitimate objectives. *Id.*

*8 In the present case, Marcine Carr's claim of intentional infliction of emotional distress is based upon the manner in which Ford handled her during

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                      Page 8
Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.))

her arrest. She alleges he "held her against the wall" and that he and Brisinte "slammed her against the trunk of the squad car, grabbed her by her pony tail and threw her into the squad car."It is also alleged she was taken from the house with no shoes, socks and jacket on. While these allegations, if proven, might support a claim of unlawful use of force (a matter upon which this court expresses no view at this time), they are insufficient to state a claim for intentional infliction of emotional distress because they do not reflect extreme and outrageous conduct. In the context of an arrest and a use of force by the police, there must be allegations of more than a misuse of police authority to support a claim of extreme and outrageous behavior. The tort of intentional infliction of emotional distress does not exist in a vacuum and must be viewed in its pertinent context. The police often times use force when arresting someone, sometimes lawfully and sometimes excessively. Even if the force is unlawfully excessive, that alone does not make it extreme and outrageous. If it did, every claim of excessive force could be accompanied by a claim for intentional infliction of emotional distress.

Illinois law requires, in the context of police abuse of power, that the abuse be extreme. *See Doe,* 641 N.E.2d at 507. For example, in *Doe,* the police officer treated an attempted rape victim in a rude, demeaning and accusatory manner and asked inappropriate questions. *Id.* at 502.Additionally, he refused to forcibly enter the victim's apartment despite her claims that the rapist had locked himself inside with her two minor children. *Id.* Further, once the police eventually entered the apartment they found the intruder raping the victim's minor daughter and discovered that he had done so repeatedly during the time the defendant police officer had balked at entering the apartment. Thus, under this extreme set of facts, the Illinois Supreme Court reversed the trial court's dismissal of the victim's intentional infliction of emotional distress claim against the police officer. *Id.* at 509.

The facts alleged here are nowhere near those al-

leged in *Doe.*Absent allegations beyond the excessive use of force alleged here, Marcine Carr has not stated a claim for intentional infliction of emotional distress against Ford and, hence, also the sheriff. Similarly, Richard Carr's claim also fails for the same reasons. Therefore, the court grants Ford and the sheriff's motion to dismiss Counts VI and VII.FN9

> FN9. I n doing so, the court notes that the law provides adequate remedies for the Carrs should they prove that Ford used excessive or unlawful force against Marcine Carr. The tort of intentional infliction of emotional distress is given narrow application in Illinois. *See Miller v. Linden,* 172 Ill. App. 3d 594, 527 N.E.2d 47, 50 (2d Dist. 1988) (noting that Illinois appellate courts generally uphold dismissal of claims alleging this tort); *see also* Sabin, *Intentional Infliction of Emotional Distress - 25 Years Later,*76 Ill. B.J. 864 (1987) (the tort exists, for the most part, only in theory). Its purpose is not to place a gloss over other claims arising out of the same conduct.

**III.) *Flight defendants motion to dismiss Counts XII - XVIII***

The claims in Counts XII through XVIII arise out of the helicopter incident which occurred on January 31, 1994. Defendants seek dismissal of all seven counts.

**A.) *Denial of access to courts (Count XII)***

*\*9 There is a constitutional right of access to the courts. *Thompson v. Boggs,* 33 F.3d 847, 852 (7th Cir. 1994). To state such a claim, a plaintiff must allege a deprivation of adequate, effective or meaningful access to the courts. *Id.; see also Gentry v. Duckworth,* 65 F.3d 555, 558 (7th Cir. 1995) (to state claim for violation of right of access to the courts, prisoner must allege some quantum of detriment caused by the challenged conduct which res-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.))

ulted in the interruption and/or delay of plaintiff's pending or contemplated litigation).

Plaintiffs in this case have not alleged a deprivation of adequate, effective or meaningful access to the courts. In fact, the allegations of plaintiffs' complaint reflect just the opposite. According to paragraph 37, Marcine Carr obtained, in state court, a directed verdict in her favor on the charge of disorderly conduct and a jury verdict of not guilty on the aggravated battery and resisting a peace officer charges. It is clear, based on these allegations, that Marcine Carr obtained meaningful access to court on the criminal charges brought against her. As for their civil action, it is quite apparent by this lawsuit that plaintiffs have achieved meaningful access to this court. Accordingly, the court grants defendants' motion to dismiss Count XII.

**B.) Deprivation of right of privacy under Fourteenth Amendment (Count XIII)**

Plaintiffs allege in Count XIII that Bitton and Bays deprived Marcine Carr "of her right to privacy and to be free from the unreasonable intrusion of her home and effects" as secured by the Fourteenth Amendment. The protection of privacy is allocated to the Fourth Amendment and the protection of property to the Due Process Clauses of the Fifth and Fourteenth Amendments. *Soldal v. County of Cook,* 942 F.2d 1073, 1080 (7th Cir. 1991). Hence, plaintiffs cannot maintain a claim for invasion of privacy under the Fourteenth Amendment based on the alleged intrusive police conduct. Therefore, the court grants defendants' motion to dismiss Count XIII.

**C.) Deprivation of due process and the right to be free from state action that intrudes on personal security and integrity (Count XV)**

In Count XV, plaintiffs allege that Marcine Carr was denied her right of due process and her right to be free from state action that unjustifiably intrudes on her personal security and integrity as secured by

the Fourteenth Amendment. This claim, however, fails for the same reason as the claim in Count XIII. The nature of the claim in Count XV is that of an unlawful intrusion into her privacy. That type of interest is protected under the Fourth Amendment, not the Fourteenth Amendment. *See Soldal,* 942 F.2d at 1080. Consequently, the court grants defendants' motion to dismiss Count XV.

**D.) Conspiracy to interfere with Marcine Carr's civil rights (Count XVI)**

Count XVI alleges that Bays and Brisinte conspired to deny Marcine Carr of her right of access to the courts. This claim necessarily fails because this court has already ruled as to Count XII that, based on other allegations in the complaint, Marcine Carr was not denied meaningful access to the courts. Therefore, any claim for a conspiracy to that end cannot be maintained. *See Hampton v. Hanrahan,* 600 F.2d 600, 622-23 (7th Cir. 1979), *aff'd in part on other grounds,* 446 U.S. 754 (1980) (per curium). The court grants defendants' motion to dismiss Count XVI.

**E.) Intentional infliction of emotional distress (Count XVII)**

*10 Plaintiffs allege in Count XVII that the helicopter incident constituted extreme and outrageous conduct resulting in severe emotional distress to Marcine Carr. As discussed earlier in this order, plaintiffs must allege that defendants' conduct was extreme and outrageous, that defendants either intended that their conduct should inflict severe emotional, or knew there was a high probability that their conduct would cause severe emotional distress and that defendants' conduct in fact caused severe emotional distress. *See Doe,* 641 N.E.2d at 506. Extreme and outrageous conduct must be differentiated from the mere insults, indignities, threats, annoyances, petty oppressions or other trivialities that are part of the costs of a complex society from which the law provides no protection. *Id.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 10
Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.))

While extreme and outrageous conduct can arise from an abuse of police power, *see Doe,* 641 N.E.2d at 507, the allegations here fall short of the mark. It cannot be said that the police flying a helicopter over someone's house one time at treetop level with spotlights shining on the house is anything more than an annoyance, indignity or petty oppression. It is nowhere near the type of conduct that the Illinois Supreme Court held to be extreme and outrageous in *Doe* or other cases. As such, the court grants defendants' motion to dismiss Count XVII.

#### F.) *Trespass (Count XVIII)*

In Count XVIII plaintiffs allege that Bitton, by use of the helicopter, "entered upon their property and curtilage" and as a result they were "deprived of the use of [their] property." In their brief in response to the motion to dismiss Count XVIII, plaintiffs contend that the use of the airspace over plaintiffs' home constituted a trespass and that that airspace was "necessary for the adequate use and enjoyment of their property."

There is one case under Illinois law discussing the issue of trespass by an aircraft. In *Geller v. Brownstone Condominium Assoc.,* 82 Ill. App. 3d 334, 402 N.E.2d 807, 808 (1st Dist. 1980), the appellate court stated that a property owner owns only as much air space above his property as he can practicably use. To constitute an actionable trespass, an intrusion has to be such that it subtracts from the owner's use of the property. *Id.* A plaintiff must allege that he or she put the air space allegedly invaded to use. *Id.*

Here, Count XVIII contains no allegations that defendants allegedly intruded into any practicably used air space. The absence of such allegations is not surprising as most owners of residential property do not put the air space over their property to any practicable use. It is only in very rare circumstances that a plaintiff would be able to maintain a trespass action under Illinois law based on an intru-

sion into the air space above his property by an aircraft. Because the allegations here do not support such a claim, the court grants defendants' motion to dismiss Count XVIII.

#### G.) *Unlawful search by the flight of the helicopter in violation of the Fourth Amendment (Count XIV)*

*11 Plaintiffs allege that on January 31, 1994, sometime between 9:00 p.m. and 9:15 p.m., while Marcine Carr was at home with her daughter, they heard "loud, unidentifiable sounds" outside the house. As they went downstairs, the noise became louder, and Marcine Carr recognized it as the sound of a helicopter. The helicopter's low altitude caused the windows in the house to shake, and several items fell off of shelves and tables and broke.

Marcine Carr moved, along with her daughter, to the center of the room. The helicopter noise became louder, and lights began blinking and shining through the windows. Marcine Carr ran to the back porch and saw a helicopter hovering over the back porch. When she stepped outside to see if there was any identification on the helicopter, a bright light was shone on her. She then ran back into her house and covered herself and her daughter with a blanket because of her fear the windows would implode. The helicopter hovered over the back porch for about ten minutes and was flying at an altitude of no more than 100 feet or treetop level.

Marcine Carr and several neighbors wrote letters to the FAA complaining about the incident. The FAA conducted an inspection and took formal administrative action against Bitton, the pilot, warning him for operating at less than the minimum safe altitude in a careless manner and contrary to FAA regulations.

In Count XIV, plaintiffs allege that Bitton and Bays deprived Marcine Carr of her right to be free from an unreasonable intrusion into her home under the Fourth Amendment. Flight defendants contend

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 11
Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.)
(Cite as: Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.))

Count XIV should be dismissed because the allegations of a mere helicopter flight over plaintiffs' home are insufficient to trigger the Fourth Amendment, especially absent any allegations that the flight defendants observed anything of an intimate nature or any other object or activity protected by the Fourth Amendment.

The touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy. *California v. Ciraolo,* 476 U.S. 207, 211 (1986). In that regard, a court must ask: (1) whether the individual has manifested a subjective expectation of privacy in the object of the challenged search; and (2) if so, is society willing to recognize that expectation as reasonable. *Id.* Such an expectation of privacy can extend to the curtilage of a home. *Id.* Whether a particular area is part of a home's curtilage depends on: the proximity of the area to the home, the nature of the uses to which the home is put, whether the area is within an enclosure surrounding the home and the steps the resident has taken to protect the area from observation by passersby. *United States v. Pace,* 898 F.2d 1218, 1229 n.2 (7th Cir. 1990) (citing *United States v. Dunn,* 480 U.S. 294, 301 (1987)).

That the area is within the curtilage, however, does not itself bar all police observation. *Ciraolo,* 476 U.S. at 211. The Fourth Amendment has never been extended to require law enforcement officers to shield their eyes when passing by a home on a public thoroughfare. *Id.* Nor does the mere fact that an individual has taken measures to restrict some views of his activities preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible. *Id.* at 211-12.In other words, what a person knowingly exposes to the public, even in his own home, is not a subject of Fourth Amendment protection. *Id.* at 212.

*12 In this case, plaintiffs have not alleged the existence or nature of any curtilage surrounding their home sufficient to implicate the Fourth Amend-

ment.[FN10]Moreover, even if they had, they have not alleged that Marcine Carr had manifested any expectation of privacy in the curtilage and that any such manifestation would be one society was willing to recognize as reasonable. Absent such allegations, the court cannot assess the nature and extent of Marcine Carr's Fourth Amendment claim based on the helicopter incident. As such, the court grants defendants' motion to dismiss Count XIV.[FN11]

> FN10. There are no allegations in the amended complaint that anyone on the helicopter looked into plaintiffs' home. Thus, there is no claim that a search of the home occurred and, therefore, the Fourth Amendment has not been implicated in respect to the interior of plaintiffs' home. On the other hand, the amended complaint alleges that the helicopter "hovered over the back porch for approximately ten minutes" and that a bright light was shown on Marcine Carr when she stepped outside her house. These allegations are sufficient to raise a reasonable inference that the occupants of the helicopter were looking into the area at the back of plaintiffs' house. This is sufficient to constitute a search thereby triggering the protections of the Fourth Amendment.

> FN11. The court notes that while including necessary allegations in an amended complaint might prompt a motion to dismiss, the resolution of the issue of whether a curtilage exists or whether a homeowner has a reasonable expectation of privacy therein is better-suited to a motion for summary judgment.

### Motions to sever

As noted earlier, all defendants, except NIMC, Bender, Scarbrough and Dejneka, have moved to sever the claims against them. A district court may sever a claim or claims under either Rule 21 or Rule 42(b) of the Federal Rules of Civil Procedure.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.))**

*See Otis Clapp & Son, Inc. v. Filmore Vitamin Co.,* 754 F.2d 738, 743 (7th Cir. 1985). The court has the discretion to do so under Rule 42(b) whenever considerations of economy and convenience indicate it is advisable to do so or under Rule 21 if doing so will increase judicial economy and avoid prejudice to the litigants. *Id.* While it may be appropriate to hold separate trials in certain cases, the separation of issues for trial is not to be routinely ordered. *Remcor Prod. Co. v. Servend Int'l, Inc.,* No. 93 C. 1823, 1994 WL 594723, at *1 (N.D. Ill. Oct. 28, 1994).

In the present case, the court finds no basis to sever any of the claims or to conduct separate trials thereon. The events as alleged in the amended complaint depict a series of conduct by the various defendants which arises out of the purported unlawful arrest of Marcine Carr on December 13, 1993. While some of the events are separated in time, they are, as alleged, interrelated. Furthermore, although there are several claims against numerous defendants, some of those claims have been eliminated or narrowed by this order. There is simply no significant basis under these allegations that separate trials would increase judicial economy, avoid prejudice or promote convenience. Therefore, the court denies all defendants' motion to sever.

### CONCLUSION

For the foregoing reasons, the court dismisses Counts XI - XVIII in their entirety, dismisses the battery claim in Count X as to Bender and Scarbrough, dismisses Counts VI and VII as to Ford and the sheriff, dismisses the punitive damages claims against NIMC, Bender, Scarbrough and Dejneka in Counts X and XI, denies the motion to dismiss Count II in its entirety and denies all motions to sever.

Should plaintiffs seek leave to file a further amended complaint to the extent such further amendment would be appropriate in light of this order, plaintiffs are advised that such amendment will be the last the court will consider. This cause is already several years old and has yet to progress beyond the initial pleading stage. It is time for this case to proceed.

N.D.Ill.,1996.
Carr v. Village of Richmond
Not Reported in F.Supp., 1996 WL 663921 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                Page 1
Not Reported in F.Supp.2d, 1999 WL 787628 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 787628 (N.D.Ill.))

**C**

Trusty v. McCall
N.D.Ill.,1999.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois.
Herman TRUSTY, Plaintiff,
v.
D. MCCALL, Star # 13240, and M. Sardo, Star #
19621, Defendants.
No. 99 C 3992.

Sept. 24, 1999.

## MEMORANDUM OPINION

KOCORAS, J.
*1 This matter comes before the court on the Defendants' motion to dismiss certain counts of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Defendants' motion to dismiss is denied.

## BACKGROUND

This action arises out of the alleged wrongful arrest and malicious prosecution of Plaintiff Herman Trusty ("Trusty"). Trusty filed a four count complaint against Defendant Officer D. McCall ("McCall") and Defendant Officer M. Sardo ("Sardo") (collectively the "Defendants"), alleging, among other claims, malicious prosecution under 42 U.S.C. § 1983 a nd under Illinois law. For the purposes of this motion, the following facts, which come from Trusty's Complaint, are taken as true.

At approximately 2 a.m. on November 24, 1998, Defendants approached Trusty's car as he was parking in his driveway at his home in Chicago. Defendant Sardo requested Trusty to produce his driver's license. Although Trusty had a valid driver's license in his wallet, he was unable to find it because Defendant Sardo was shining a flashlight directly into his face. Defendant McCall then stated

that he would give Trusty four seconds to produce the license and began counting. When Defendant McCall reached the count of two, he grabbed Trusty's left arm and pulled him backwards, and the two of them fell into Trusty's car. Defendant Sardo also grabbed Trusty, and eventually Trusty injured his knee and fell to the ground. Defendant McCall then sprayed Trusty with pepper spray and pushed his head to the ground. Finally, Defendants arrested Trusty and delivered him to the police station. Trusty spent three and a half hours in jail without being informed of the reason for his arrest.

Trusty was charged with resisting arrest and was issued tickets for fleeing and eluding, two tickets for failure to stop at a stop sign, and tickets for failure to produce a driver's license and proof of insurance. On February 1, 1999, Trusty was found not guilty on the charges of resisting arrest and fleeing and eluding. Trusty was, however, found guilty on the two charges of failing to stop at a stop sign. The charges for failing to produce a driver's license and proof of insurance were stricken with leave to reinstate.

Trusty filed claims against Defendants for use of excessive force, false arrest, and malicious prosecution. In this motion, Defendants seek dismissal of Trusty's malicious prosecution claims, arguing that Plaintiff fails to state a claim for malicious prosecution under either federal or Illinois law.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. A defendant must meet a high standard in order to have a complaint dismissed for failure to state a claim upon which relief may be granted. In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex. C



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 787628 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 787628 (N.D.Ill.))

in the plaintiff's complaint must be taken as true. *Bontkowski v. First Nat'l Bank of Cicero,* 998 F.2d 459, 461 (7th Cir.1993).*cert. denied,*510 U.S. 1012, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir.1992), *cert. denied,*506 U.S. 893, 113 S.Ct. 267, 121 L.Ed.2d 196 (1992). With these principles in mind, the Court evaluates the Defendants' motion.

## DISCUSSION

**\*2** Defendants argue that Plaintiff has failed to sufficiently plead a cause of action for malicious prosecution under federal and Illinois law. Specifically, Defendants contend that Plaintiff has failed to establish two necessary elements for malicious prosecution under Illinois law and further that this failure is fatal to Plaintiff's federal claim. The Court disagrees with Defendants' arguments.

### I. Malicious Prosecution under Illinois Law

In order to establish a cause of action for malicious prosecution under Illinois law, a plaintiff must show: (1) the initiation or continuance of some judicial proceeding by defendant; (2) the termination of the proceeding in the plaintiff's favor; (3) the absence of probable cause for such a proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff. *See, e.g.,Hahn v. Village of Downers Grove,* No. 98 C 7281, 1999 WL 167036,*3 (N.D.Ill. Mar. 19, 1999), *citingSerfecz v. Jewel Food Stores,* 67 F.3d 591, 602 (7th Cir.1995), *cert. denied,*516 U.S. 1159, 116 S.Ct. 1042, 134 L.Ed.2d 189 (1996). Defendants primarily argue that

Plaintiff has failed to demonstrate that the prior proceedings terminated in Plaintiff's favor since Plaintiff was found guilty of two counts of failing to stop at a stop sign. Defendants additionally assert in their Reply brief that Plaintiff has not demonstrated any injury. The Court disagrees with both of Defendants' arguments.

### A. Termination of Prior Proceedings in Plaintiff's Favor

The law in Illinois does not support Defendants' primary argument. Previous decisions indicate that a plaintiff may successfully plead a cause of action for malicious prosecution when the plaintiff bases the claim on charges for which the plaintiff was found not guilty, even if the plaintiff was also found guilty of another charge in the proceeding. *SeeSalley v. Schmitz,* No. 94 C 3448, 1995 WL 143554, at *1-2 (N.D.Ill. Mar. 31, 1995); *Biernacki v. Carter,* No. 95 C 1694, 1995 WL 683744, at *2 (N.D.Ill. Nov. 16, 1995); *Ford v. City of Rockford,* No. 88 C 20323, 1991 WL 352511, at *2 (N.D.Ill. Oct. 1, 1991); *Conterras v. Village of Woodridge,* No. 93 C 7727, 1994 WL 163994, at *2 (N.D.Ill. Apr. 29, 1994).

In *Salley v. Schmitz,* the plaintiff was found not guilty of attempted first degree murder but pled guilty to the charge of unlawful use of a weapon by a felon. The Court held that these facts sufficiently indicated that the prior criminal proceeding terminated in plaintiff's favor for purposes of plaintiff's malicious prosecution claim, which was based solely on the attempted murder charge. *SeeSalley v. Schmitz,* 1995 WL 143554, at *2. The Court also observed that although the two charges arose out of the same facts, neither offense was a lesser included offense of the other. *Seeid.*Significantly, the Court noted that the plaintiff was acquitted of the more serious charge and pled guilty to the lesser charge. *Seeid.*

**\*3** Similarly, in the instant case, Plaintiff sufficiently alleges facts that establish that Plaintiff's

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 787628 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 1999 WL 787628 (N.D.Ill.))**

prior proceeding terminated in Plaintiff's favor. Plaintiff bases his claim for malicious prosecution on the charges for which Plaintiff was found not guilty, even though Plaintiff was also found guilty of another charge in the same proceeding. The charges for which Plaintiff was found not guilty-resisting arrest and fleeing and eluding-and the charge for which Plaintiff was found guilty-failing to stop at two stop signs-are not lesser included offenses of the other. Given these facts, the Court finds that for purposes of Plaintiff's malicious prosecution claim, Plaintiff has sufficiently shown that his prior proceeding terminated in his favor.

**B. Plaintiff's Injury**

Defendants state generally that Plaintiff has not sufficiently alleged that he was injured. Under Illinois law, the plaintiff satisfies the injury element by showing "an arrest or seizure of property or some constructive taking or interference with the person or property."*Serfecz v. Jewel Food Stores,* 67 F.3d at 602,*quotingLevin v. King,* 271 Ill.App.3d 728, 208 Ill.Dec. 186, 188, 648 N.E.2d 1108, 1110 (1995). Because Plaintiff was arrested, he has satisfied this requirement.

**II. Malicious Prosecution under Federal Law**

Defendants predicate their entire attack on Plaintiff's claim for malicious prosecution under federal law on Plaintiff's alleged failure to meet the Illinois requirements for malicious prosecution. Defendants argue that because federal law requires Plaintiff to show that he has satisfied the requirements of a state law cause of action for malicious prosecution, Plaintiff's federal cause of action is deficient. Because the Court has already determined that Plaintiff has sufficiently set out a claim for malicious prosecution under Illinois law, the Court rejects this argument.

### CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss Plaintiff's claims for malicious prosecution is denied.

N.D.Ill.,1999.
Trusty v. McCall
Not Reported in F.Supp.2d, 1999 WL 787628 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 1999 WL 167036 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d, 1999 WL 167036 (N.D.Ill.))**

**H**
Hahn v. Village of Downers Grove
N.D.Ill.,1999.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
Lee HAHN, Plaintiff,
v.
VILLAGE OF DOWNERS GROVE, a municipal
corporation, George P. Graves, individually and as
Chief of Police of the Village of Downers Grove,
and Riccardo Ginex, individually and as Police
Lieutenant and agent of the Village of Downers
Grove, Defendants.
**No. 98 C 7281.**

March 19, 1999.

MEMORANDUM OPINION AND ORDER

KOCORAS, District J.
**\*1** This matter comes before the court on defendant
Village of Downers Grove's motion to dismiss
plaintiff Lee Hahn's First Amended Complaint, pur-
suant to Federal Rule of Civil Procedure 12(b)(6),
and defendants George P. Graves' and Riccardo
Ginex's motion to dismiss pursuant to Rule
12(b)(6), or in the alternative, motion to strike cer-
tain paragraphs of plaintiff's First Amended Com-
plaint, pursuant to Rule 12(f). For the reasons set
forth below, we deny Downers Grove's motion and
grant in part and deny in part Graves' and Ginex's
motion.

BACKGROUND

The following facts are taken from plaintiff Lee
Hahn's ("Hahn's") First Amended Complaint, the
truth of which we are obligated to assume for pur-
poses of this motion to dismiss.

Plaintiff Hahn, a resident of Bolingbrook, Illinois,
has been a member of the Downers Grove Police

Department since 1982. Although the exact date is
unclear, at some point prior to the filing of his First
Amended Complaint, Hahn ascended to the position
of Sergeant in the department.

Defendant Village of Downers Grove ("Downers
Grove") is, and at all relevant times was, a muni-
cipal corporation authorized and formed under the
laws of the State of Illinois, having its offices at
801 Burlington, Downers Grove, Illinois. Defend-
ant George P. Graves ("Graves") is, and at all rel-
evant times was, the Downers Grove Chief of Po-
lice. Pursuant to Downers Grove's authorization,
Graves enacted official department policy regarding
the discipline of police personnel, including the
suspension of such personnel. Graves is, and at all
relevant times was, designated by Downers Grove
as the individual with final decision-making author-
ity over disciplinary decisions for police personnel,
including suspensions. Defendant Riccardo Ginex
("Ginex") is, and at all relevant times was, a Lieu-
tenant with the Downers Grove Police Department.
Ginex is, and at all relevant times was, designated
by Downers Grove as the individual with final de-
cision-making authority over decisions regarding
the investigation of police personnel for alleged vi-
olations of official department policy.

Hahn alleges that for some time prior to January 15,
1998, certain "command officers" o f the Downers
Grove Police Department used department time, de-
partment personnel and department resources to op-
erate or participate in private businesses. Hahn fur-
ther alleges that such conduct: (1) interfered with
the command officers' department duties; (2)
caused the use of public taxes for private gain; (3)
created lapses in the chain of command within the
Downers Grove Police Department; and (4) under-
mined the morale of the department. Hahn was
"persistently outspoken" about the alleged prob-
lems caused by the outside employment of the com-
mand officers. Hahn believed that such outside em-
ployment violated the policies, rules, regulations
and general orders of the Downers Grove Police

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 1999 WL 167036 (N.D.Ill.)

**(Cite as: Not Reported in F.Supp.2d, 1999 WL 167036 (N.D.Ill.))**

Page 2

Department.

Sometime in February 1997, a newspaper serving the Downers Grove area published an anonymous letter disclosing that a command officer of the Downers Grove Police Department was using police department resources and personnel to carry out, in part, his private practice of law. This letter was also sent to the DuPage County State's Attorneys Office, which resulted in further public dissemination of this information.

**\*2** The DuPage County State's Attorneys Office thereafter initiated an investigation of possible criminal wrongdoing by certain members of the Downers Grove Police Department. Upon learning of this investigation, Graves told Hahn and other Downers Grove police officers that, upon discovering the identity of the anonymous letter's author, Graves would terminate his employment. (Although it is unclear, Graves must have believed that a Downers Grove police officer authored the anonymous letter).

Graves and Ginex ultimately concluded that Hahn either authored the anonymous letter or at least was responsible for providing the information contained in the letter. In August 1997, pursuant to his authority over decisions regarding the investigation of police personnel for alleged violations of department policy, Ginex initiated a "stake out" of Hahn in hopes of uncovering evidence that Hahn was violating department policies, rules and regulations. Ginex intended to use any such evidence to initiate disciplinary proceedings against Hahn and, ultimately, to suspend and/or terminate him.

On September 19, 1997, while on duty, Hahn, then a Sergeant in the Downers Grove Police Department, responded to a request for police assistance at a private residence. During this call, subordinate officers asked Hahn to authorize a forcible, warrantless entry into the private residence. Other Downers Grove police officers previously responded to a call for assistance at the residence and the occupants refused to open the door.

Based upon the information before him and his professional judgment as a 16-year veteran of the police department, Hahn concluded that no sufficient basis existed to authorize a forcible, warrantless entry into the private residence. For this reason, Hahn refused to give the subordinate officers permission to forcibly enter the private residence on September 19, 1997.

On or about November 14, 1997, Ginex notified Hahn that the Downers Grove Police Department had initiated a formal investigation of Hahn's conduct, including: (1) Hahn's refusal to authorize a forcible entry into the private residence on September 19, 1997; (2) Hahn's alleged failure to be at his duty post between the hours of 6:30 a.m. and 4:30 p.m. on certain occasions; and (3) Hahn's alleged failure to be at his duty post for 10 full hours on certain occasions. The Downers Grove Police Department initiated its investigation notwithstanding Graves' and Ginex's knowledge that: (1) Hahn acted within the scope of his discretion in refusing to authorize a forcible entry on September 19, 1997; (2) Downers Grove Police Department policy, custom and practice did not require Sergeants (including Hahn) to be on duty between the hours of 6:30 a .m. and 4:30 p.m., as long as they were on duty for 10 full hours and "bracketed" the line officers' 7:00 a.m. and 3:00 p.m duty shifts; and (3) Downers Grove Police Department policy permitted Sergeants (including Hahn) early relief from daily duty, to compensate them for additional hours they worked in excess of the prescribed four 10-hour shifts per week.

**\*3** Hahn alleges that during the police department's investigation of him, Graves and Ginex repeatedly failed to conform to and abide by internal department policies and procedures with respect to such investigations. Hahn further alleges that Graves and Ginex "maliciously, wrongfully and unjustly, without probable cause, instituted formal disciplinary proceedings" in an attempt to achieve Hahn's termination from the Downers Grove Police Department.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                             Page 3
Not Reported in F.Supp.2d, 1999 WL 167036 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 167036 (N.D.Ill.))

On or about January 15, 1998, Graves, at the direction and request of Ginex, suspended Hahn for the above-listed acts. *See supra.* On that same day, Graves filed charges with the Downers Grove Board of Fire and Police Commissioners ("the Board of Commissioners") requesting the Board to terminate Hahn for alleged violations of police department policies, rules and regulations. Hahn claims Graves, through this conduct, acted maliciously and without any probable cause in an attempt (1) to injure Hahn's good name; (2) to bring Hahn into public disgrace; (3) to cause Hahn to defend his 16-year career with the Downers Grove Police Department; and (4) "to impoverish, oppress and ruin Hahn, regardless of the outcome of the merits of the proceedings." Hahn also alleges that his suspension and the institution of disciplinary measures against him were in retaliation for his "outspokenness regarding the outside employment practices of command officers, and for Graves' perception that Hahn was responsible for informing the press and the DuPage State's Attorney of a command officer's admitted improper use of Police Department resources and personnel to carry out his private practice of law."

On or about April 17, 1998, after a full evidentiary hearing on the merits, the Board of Commissioners found Hahn not guilty of all charges brought against him. On February 9, 1999, Hahn filed a seven-count First Amended Complaint, alleging, *inter alia,* the following: (count I-Malicious Prosecution against all Defendants) Graves, at Ginex's request, maliciously and without probable cause, initiated formal disciplinary proceedings against Hahn, in violation of 42 U.S.C. § 1983; (counts II-IV against all Defendants) the Defendants investigated and subsequently brought charges against Hahn in retaliation for Hahn exercising his rights to free and legitimate speech, in violation of: (a) 42 U.S.C. § 1983 (count II); (b) the First Amendment to the United States Constitution (count III); (c) Article I, section 4 of the Illinois Constitution (count IV); (counts V and VI-state law Malicious Prosecution against all Defendants) Graves, at Ginex's request,

maliciously and without probable cause, initiated formal disciplinary proceedings against Hahn, resulting in a loss of prospective employment opportunities for Hahn; (count VII-state law Intentional Infliction of Emotional Distress against all Defendants) as a result of the investigation, suspension and disciplinary proceedings, Hahn suffered severe and extreme emotional distress, anxiety, humiliation and depression.

*4 The Defendants now file separate motions to dismiss. Downers Grove seeks dismissal of counts V and VI of Hahn's complaint alleging a state law claim for malicious prosecution. Graves and Ginex seek dismissal of count I-IV and VII of Hahn's complaint, in the alternative, request that we strike certain paragraphs of Hahn's complaint. We will address each of the Defendant's motions in turn. Before we examine the merits of the Defendants' motions, we set forth the legal standard that guides our analysis.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. A defendant must meet a high standard in order to have a complaint dismissed for failure to state a claim upon which relief may be granted. In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. *Bontkowski v . First Nation al Bank o f Cicer o,* 9 98 F.2d 459, 461 (7th Cir.1993), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential ele-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 167036 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 167036 (N.D.Ill.))

ments of the cause of action. *Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir.1992), *cert. denied,* 506 U.S. 893, 113 S.Ct. 267, 121 L.Ed.2d 196 (1992). It is with these principles in mind that we review the Defendants' motions.

## DISCUSSION

As noted above, the Defendants seek different relief in their respective motions. For this reason, we address separately the pending motions.

### A. Defendant Village of Downers Grove

Downers Grove argues that we should dismiss counts V and VI of Hahn's First Amended Complaint because Hahn failed to sufficiently plead a cause of action for state law malicious prosecution. We disagree.

In order to establish a malicious prosecution claim under Illinois law, a plaintiff must show: (1) the institution of some action against him; (2) the action was terminated in his favor; (3) the action was brought maliciously and without probable cause; and (4) he suffered "special injury" or special damage beyond the usual expense, time or annoyance in defending a lawsuit. *Serfecz v.. Jewel Food Stores,* 67 F.3d 591, 602 (7th Cir.1995), *cert. denied,* 516 U.S. 1159, 116 S.Ct. 1042, 134 L.Ed.2d 189 (1996) (citing *Levin v. King,* 271 Ill.App.3d 728, 648 N.E.2d 1108, 1110 (1st Dist.1995); *Keefe v. Aluminum Co. of Am.,* 166 Ill.App.3d 316, 519 N.E.2d 955, 956 (1st Dist.1988)). Downers Grove argues Hahn failed to adequately plead the existence of a "special injury." In response, Hahn first claims that because the administrative proceedings initiated against him were in the manner of a criminal proceeding, he need not plead "special injury." Second, Hahn claims that even if he must plead "special injury," he has sufficiently done so.

**\*5** We first examine Hahn's contention that the internal police investigation of him and the subsequent administrative hearings were akin to a

criminal proceeding. Hahn does not claim Downers Grove ever accused him of committing a crime. Downers Grove simply initiated an internal investigation and subsequent hearing regarding allegations of improper, but far short of illegal, conduct by Hahn. Moreover, although Hahn faced the possible loss of his employment with the Downers Grove Police Department, he did not face traditional criminal sanctions, such as incarceration or a fine. Finally, the one court in our jurisdiction that has examined this issue questioned whether internal administrative proceedings are "judicial proceedings" to which a malicious prosecution claim applies. *See Greer v. DeRobertis,* 568 F.Supp. 1370, 1376 (N.D.Ill.1983) (refused to extend the malicious prosecution tort to prison disciplinary proceedings). For the reasons set forth above, we reject Hahn's argument that he need not plead "special injury" to support his malicious prosecution claim because the Downers Grove Police Department investigation and hearings against him were in the nature of a criminal proceeding. We must therefore determine whether Hahn sufficiently plead the existence of a "special injury." *See Serfecz,* 67 F.3d at 602.

In the context of a malicious prosecution claim, Illinois courts define "special injury" as one " 'identified with an arrest or seizure of property or some constructive taking or interference with the person or property.' ' *Id.* (quoting *Levin,* 648 N.E.2d at 1110);*see also Keefe,* 519 N.E.2d at 957 ("The special injury requirement in a malicious prosecution action is injury over and above the ordinary expense and trouble attendant upon the defense of an ordinary civil suit.") (internal quotations and citations omitted).

In the present matter, Hahn claims he has been injured and sustained damages in that, *inter alia:*

a. he is unable to obtain a comparable position outside the Downers Grove Police Department and he was denied the opportunity for promotions, advancement and other employment;

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                        Page 5
Not Reported in F.Supp.2d, 1999 WL 167036 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 167036 (N.D.Ill.))

b. he has suffered and continues to suffer extreme mental distress, anxiety, depression, rejection and relegation to a second-class status;

c. his reputation has been greatly damaged;

d. he was publicly disgraced among family, friends, prospective employers, neighbors and community members; and

e. some people, not knowing of Hahn's innocence still believe or suspect that he is guilty of the charges alleged against him by the Defendants.

We think Hahn's damages allegations satisfy the "special injury" requirement of an Illinois malicious prosecution claim. The alleged loss to Hahn's reputation is not sufficient to establish "special injury." *See Keefe,* 519 N.E.2d at 957. Neither can Hahn's alleged distress, anxiety and depression qualify as "special injury," as these symptoms likely haunt most litigants in civil suits. *See id.* We do think, however, Hahn's claim that he is unable to obtain a comparable position outside the Downers Grove Police Department as a result of the Defendants' conduct sufficiently alleges "special injury." *Compare Norin v . Scheldt Mfg. Co.,* 297 Ill. 521, 130 N.E. 791 (1921) (concluding that prosecution of involuntary bankruptcy created basis for malicious prosecution claim because of the unusual and far reaching impact of a bankruptcy action on property rights) *with Keefe,* 519 N.E.2d at 957 (determining that public record of unsatisfied judgment and impairment of credit rating as a result of pending litigation did not satisfy special injury requirement). We can envision future employment roadblocks for Hahn as a result of the Downers Grove investigation, his suspension and the adversary proceedings. Although the Board of Commissioners ultimately absolved Hahn of any wrongdoing, the stain on his professional record may be permanent. For this reason, we find the rationale of the *Norin* case (*see supra* ) applicable to the present matter. We, therefore, find Hahn sufficiently plead a state law claim for malicious prosecution and we deny Downers Grove's motion to dismiss.

**B. Defendants Graves and Ginex**

\*6 Graves and Ginex seek the dismissal of counts I-IV and count VII of Hahn's First Amended Complaint. We will review each of Graves' and Ginex's arguments below.

**1. Count I-Malicious Prosecution under 42 U.S.C. § 1983**

Relying upon the Supreme Court's decision in *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) and its progeny, Graves and Ginex argue that the law does not provide Hahn a § 1983 cause of action for malicious prosecution under the present facts. We agree.

Section 1983 creates a federal cause of action for the " 'deprivation, under color of the law, of a citizen's rights, privileges, or immunities secured by the Constitution and the laws of the United States." ' *Washington v. Summerville,* 127 F.3d 552, 558 (7th Cir.1997), *cert. denied,___* U.S. ___, 118 S.Ct. 1515, 140 L.Ed.2d 668 (1998) (quoting *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir.1997)). The Seventh Circuit has interpreted *Albright* to provide that "the only constitutional amendment that is implicated by a malicious prosecution claim is the Fourth Amendment." *Washington,* 127 F.3d at 558;*see also Spiegel v. Rabinovitz,* 121 F.3d 251, 256-57 (7th Cir.1997); *Reed v. City of Chicago,* 77 F.3d 1049, 1052-53 (7th Cir.1996), *cert. denied,* ___ U.S. ___, 118 S.Ct. 565, 139 L.Ed.2d 405 (1997); *Smart v. Board of Trustees of University of Illinois,* 34 F.3d 432, 434 (7th Cir.1994), *cert. denied,*513 U.S. 1129, 115 S.Ct. 941, 130 L.Ed.2d 885 (1995).

In the present matter, Hahn's complaint contains no allegation that the Defendants violated his Fourth Amendment rights and we can interpret nothing within the complaint that would give rise to a Fourth Amendment violation. Based upon the Seventh Circuit's interpretation of *Albright,* we think Hahn's complaint, as presently drafted, cannot sustain a cause of action for malicious prosecution un-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 6
Not Reported in F.Supp.2d, 1999 WL 167036 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 167036 (N.D.Ill.))

der § 1983. For this reason, we grant Graves' and Ginex's motion to dismiss count I of Hahn's First Amended Complaint.

Relying upon *Leslie v. Doyle,* 125 F.3d 1132 (7th Cir.1997), Hahn argues that an action taken in retaliation for exercising a Constitutional right (i.e. the right to free speech) is actionable as a § 1983 malicious prosecution claim. We disagree. The *Leslie* court, in *dicta,* simply recognized that some circuits hold a malicious prosecution actionable if initiated in retaliation for the exercise of a constitutional right. *See Leslie,* 125 F.3d at 1137 n. 2 (citing, *inter a lia, F ranco v . Kelly,* 8 54 F.2d 584, 586 (2d Cir.1988)). The *Leslie* court noted that the facts before it did not suggest retaliation. *See Leslie,* 125 F.3d at 1137 n. 2. As noted above, the Seventh Circuit, in a long line of cases, interpreted *Albright* to allow a § 1983 malicious prosecution claim only where the defendants' conduct implicates the Fourth Amendment. Because Hahn makes no Fourth Amendment allegations, his § 1983 malicious prosecution claim must fail.

**2. Counts II and III-First Amendment Violations Under § 1983**

*7 In counts II and III of his First Amended Complaint, Hahn alleges Graves and Ginex instituted the investigation of him in retaliation for Hahn's "persistently outspoken" conduct. Graves and Ginex now seek dismissal of counts II and III on two separate grounds, namely: (1) Hahn's complaint contains no allegation that he was responsible for disclosing the outside employment issue to the press of the State's Attorney's office and (2) Hahn's allegation that he was "persistently outspoken" does not establish that his speech was "public" for First Amendment purposes. We will address each of these arguments in turn.

Graves and Ginex first argue that because Hahn's complaint fails to identify Hahn as the source of the outside employment information, his First Amendment claim must fail. We agree. To succeed on a First Amendment § 1983 retaliation claim, a plaintiff must allege and prove (1) that speech he engaged in was constitutionally protected under the circumstances and (2) that the defendants retaliated against him because of that speech. *Gorman v.. Robinson,* 977 F.2d 350, 354 (7th Cir.1992) (internal quotations and citations omitted); *Barkoo v. Melby,* 901 F.2d 613, 617 (7th Cir.1990) (citing *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)); *Mt. Healthy City School Dist. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

In *Barkoo,* the plaintiff, a police department dispatcher, alleged she was constructively discharged (1) because the defendants believed she spoke to her co-workers about the department's practice of audio taping dispatchers' private conversations and (2) because the defendants believed she was responsible for a newspaper article relating to such taping. In reversing a jury verdict on plaintiff's claims against her supervisors, the Seventh Circuit held:

To the extent that [plaintiff] alleges her employers retaliated against her because they *thought* she was engaged in First Amendment protected speech on an issue of public concern, we reject the notion that this allegation brings her claim within the requirements of § 1983. Every § 1983 case relating to workplace freedom of speech, from *Connick* on down, discusses the actual speech engaged in by the employee. [Plaintiff] not only admits, she insists that she did not provide any information to the press. [Plaintiff] provides no authority for the proposition that her free speech rights are deprived in violation of § 1983 when the speech at issue never occurred. We therefore limit our analysis of [plaintiff's] speech activities that actually occurred-her complaints to other employees about the taping of communications center conversations, and her memorandum relating to the issue of forced overtime.

*Barkoo,* 901 F.2d at 619 (emphasis in original); *see also Kyle v. Morton High School,* 144 F.3d 448,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 7
Not Reported in F.Supp.2d, 1999 WL 167036 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 167036 (N.D.Ill.))

455 (7th Cir.1998) ("There was no violation of free speech rights 'when the speech at issue never occurred.' " (quoting *Barkoo,* 901 F.2d at 619)).

**\*8** We find *Barkoo* applicable to the present matter. Even if Graves and Ginex believed Hahn was the author of the anonymous letter and, therefore, the source of the newspaper article, unless Hahn alleges that the defendants retaliated against him for his own speech, his First Amendment claim must fail. Hahn's complaint is utterly silent on whether he authored the anonymous letter. As *Barkoo* instructs, Graves' and Ginex's beliefs as to the identity of the letter's author are insufficient to sustain a § 1983 First Amendment claim. For this reason, we dismiss count II of Hahn's First Amended Complaint to the extent Hahn seeks recovery for Graves' and Ginex' belief that Hahn authored the anonymous letter at issue.

We must therefore turn our attention to the speech that "actually occurred," Hahn's alleged "persistent outspokenness." *Barkoo,* 901 F.2d at 619;*see also Wright v. Illinois Dept. of Children & Family Services,* 40 F.3d 1492, 1500 (7th Cir.1994) (when faced with a First Amendment claim, court is to examine only the speech that caused the adverse employment action). Hahn claims he was "persistently outspoken regarding the problems caused by the outside employment of various command officers," and that Graves and Ginex launched an investigation of him in retaliation for his outspokenness. Graves and Ginex move to dismiss these allegations because even if Hahn was truly "persistently outspoken," they argue his conduct was not sufficiently "public" to bring it within the confines of First Amendment analysis. We disagree.

Under the Supreme Court's holding in *Connick v. Myers, see supra,* we must first determine whether Hahn's speech addressed a matter of public concern or a matter of private interest to the employee. *Connick,* 461 U.S. at 147;*Caruso v. De Luca,* 81 F.3d 666, 670 (7th Cir.1996); *Wright,* 40 F.3d at 1500. Our public concern inquiry requires us to scrutinize the "content, form, and context of a given state-

ment, as revealed by the whole record."*Connick,* 461 U.S. at 147-48;*Caruso,* 81 F.3d at 670;*Wright,* 40 F.3d at 1501. The Seventh Circuit has held that content is the most important factor to the determination of whether a given statement is one of public concern. *See Campbell v. Towse,* 99 F.3d 820, 827 (7th Cir.1996), *cert. denied,*520 U.S. 1120, 117 S.Ct. 1254, 137 L.Ed.2d 334 (1997) (citing *Smith v. Fruin,* 28 F.3d 646, 650 (7th Cir.1994), *cert. denied,*513 U.S. 1083, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995)).

In the present matter, Hahn's alleged "persistent outspokenness" focused on command officers use of Downers Grove Police Department resources and personnel for private gain. We think this is a matter of public concern as opposed to a matter of private interest to Hahn. If Hahn's allegations were true, we expect Downers Grove taxpayers would be interested in learning their tax dollars were spent for the personal gain of a discrete few command officers of the Downers Grove Police Department. We think this topic clearly falls in the "public concern" domain. *See e.g. Biggs v. Village of Dupo,* 892 F.2d 1298, 1301-02 (7th Cir.1990) (police officer who complained in a newspaper interview about the department's inadequate funding and wrongful interference by village officials was a matter of public concern). As presently pleaded, we cannot say that Hahn was persistently outspoken "merely for personal reasons rather than a desire to air the merits of the issue."*Campbell,* 99 F.3d at 827 (internal quotations and citations omitted).

**\*9** We reject Graves' and Ginex's argument that because it is unclear whether Hahn's outspokenness reached beyond the police ranks, his statements cannot be a matter of public concern. The Seventh Circuit has repeatedly held that the scope of disclosure is not dispositive of the public concern versus private interest issue. *See Campbell,* 99 F.3d at 827 (simply because police officer made his views known in a private memorandum to his superior did not mean his speech was unprotected) (citing *Givhan v. Western Line Consolid, School*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                     Page 8
Not Reported in F.Supp.2d, 1999 WL 167036 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 167036 (N.D.Ill.))

*Dist.,* 439 U.S. 410, 415-16, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979) (First Amendment rights are not "lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public."); *Wright,* 40 F.3d at 1501-02;*Fruin,* 28 F.3d at 652).

Because we think Hahn's speech was a matter of public concern, it is protected if Hahn's interest in that expression outweighs Downer Grove's interest in promoting the efficiency of its public services. *Caruso,* 81 F.3d at 670 (citing *Gregorich v. Lund,* 54 F.3d 410, 414 (7th Cir.1995); *Wright,* 40 F.3d at 1502). Our determination of this balancing test necessarily requires us to consider and weigh several factors. *See Caruso,* 81 F.3d at 670 (citing *Wright,* 40 F.3d at 1502). As we are at the motion to dismiss stage and the parties have not even initiated discovery, now is not the proper time for us to analyze this balancing test.

We address one final issue. Graves and Ginex argue that they are entitled to qualified immunity from Hahn's First Amendment claims because it is not clearly established that the attempted discharge of Hahn constituted an adverse employment action necessary to establish a First Amendment claim. We disagree. It is undisputed that the Downers Grove Police Department suspended Hahn pending the outcome of its internal investigation. Furthermore, Hahn alleges, and we must assume as true, the police department denied him the opportunity for promotions, advancement and other employment as a result of his outspokenness. Such are actionable injures under the First Amendment. *See e.g. Dahm v. Flynn,* 60 F.3d 253, 257 (7th Cir.1994) (citing, *inter alia, Fruin,* 28 F.3d at 649 n. 3 ("even minor forms of retaliation can support a First Amendment claim, for they may have just as much of a chilling effect on speech as more drastic measures.").

For the reasons set forth above, we deny Graves' and Ginex's motion to dismiss counts II and III of Hahn's First Amended Complaint.

3. Count IV-Violation of Article I, Section 4 of the Illinois Constitution

In count IV of his complaint, Hahn claims the Defendants violated Article I, Section 4 of the Illinois Constitution when they retaliated against him for exercising his right to free and legitimate speech. As an additional basis for dismissing count IV, Graves and Ginex rely upon the Illinois Tort Immunity Act, 745 ILCS 10/2-201. We reject this argument.

*10 The Illinois Tort Immunity Act states:

Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 ILCS 10/2-201. In *Youker v. Schoenenberger,* 22 F.3d 163, 168 (7th Cir.1994), the Seventh Circuit held that immunity under the Illinois Tort Immunity Act is not absolute and does not extend to a public employee's acts based upon " 'corrupt or malicious motives." ' (quoting *Barth v. Board of Education of the City of Chicago,* 141 Ill.App.3d 266, 490 N.E.2d 77 (1st Dist.1986)).

In the present matter, Hahn's complaint sufficiently alleges Graves and Ginex acted out of malice when they initiated the internal investigation against Hahn. Hahn alleges the defendants knew his investigation and suspension were meritless but nonetheless proceeded with such actions. If Hahn's allegations prove to be meritorious, we may ultimately determine that Graves and Ginex are not entitled to protection from the Illinois Tort Immunity Act. For this reason, we deny Graves' and Ginex's motion to dismiss count IV of Hahn's complaint.

4. Count VII-Intentional Infliction of Emotional Distress

For their final argument, Graves and Ginex seek

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 167036 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d, 1999 WL 167036 (N.D.Ill.))

dismissal of Hahn's intentional infliction of emotional distress count. In sum, Graves and Ginex argue that, even if true, the allegations of Hahn's complaint are not so extreme and outrageous as to support an intentional infliction of emotional distress claim. We agree.

In order to state a cause of action for intentional infliction of emotional distress under Illinois law, a plaintiff must allege: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; and (3) the defendant's conduct in fact caused severe emotional distress. *Cook v. Winfrey,* 141 F.3d 322, 330 (7th Cir.1998) (quoting *Doe v. Calumet City,* 161 Ill.2d 374, 641 N.E.2d 498, 506 (1994)). Under Illinois law, " '[l]iability [for intentional infliction of emotional distress] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of human decency." ' *Cook,* 141 F.3d at 331 (quoting *Public Finance Corp. v. Davis,* 66 Ill.2d 85, 360 N.E.2d 765, 767 (1976)). These same standards apply when a plaintiff employee sues his employer for intentional infliction of emotional distress. *See Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 703 (7th Cir.1993) (affirming district court's dismissal of plaintiff's intentional infliction of emotional distress claim against her employee because plaintiff's "allegations do not reach the level of extreme and outrageous conduct needed to establish" such a claim).

*11 Graves and Ginex allegedly instituted an internal investigation in response to Hahn's "persistent outspokenness" and suspended Hahn from his work. We do not think such conduct, even if true, rises to the level necessary to establish an intentional infliction of emotional distress claim. Such conduct, while truly contemptible, does not "go beyond all possible bounds of human decency."*Cook,* 141 F.3d at 331. For this reason,

we grant Graves' and Ginex's motion to dismiss count VII of Hahn's First Amended Complaint.

We summarize our holding as follows: we deny Downers Grove's motion to dismiss counts V and VI of Hahn's First Amended Complaint; we grant Graves' and Ginex's motion to dismiss count 1 of Hahn's First Amended Complaint; we deny Graves' and Ginex's motion to dismiss counts II, III and IV of Hahn's First Amended Complaint; and we grant Graves' and Ginex's motion to dismiss count VII of Hahn's First Amended Complaint.

### CONCLUSION

For the reasons set forth above, we deny Downers Grove's motion to dismiss and grant in part and deny in part Graves' and Ginex's motion to dismiss.

N.D.Ill.,1999.
Hahn v. Village of Downers Grove
Not Reported in F.Supp.2d, 1999 WL 167036 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*MHN*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**FILED**

*JN* MAY 2 7 2008
5-27-2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| **ANDREA JONES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 08 CV 1741** |
| ) | **Judge Castillo** |
| **VILLAGE OF MAYWOOD, Illinois, a** ) | **Magistrate Judge Ashman** |
| **Municipal Corporation, TIMOTHY** ) | |
| **CURRY, S. CORDOBA, R. OCHOA, L.** ) | |
| **KELLY, K. WEST and UNKNOWN** ) | |
| **DEFENDANTS,** ) | |
| ) | |
| **Defendants.** ) | |

## NOTICE OF FILING AND NOTICE OF MOTION

To:    Jeffery P. Gray
        27475 Ferry Road
        Warrenville, Illinois 60555

**PLEASE TAKE NOTICE** that on May 27, 2008, I filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, **Defendants' Motion To Dismiss,** a copy of which is attached and served upon you.

**PLEASE TAKE FURTHER NOTICE** that on June 4, 2008 at 9:45 a.m., I shall appear before the Honorable Judge Castillo, or anyone sitting in his stead, in Courtroom 2141, at 219 S. Dearborn Street, Chicago, Illinois, and present **Defendants' Motion To Dismiss.**

                                        /s/ Howard C. Jablecki

Lance C. Malina
Allen Wall
Howard C. Jablecki
KLEIN, THORPE AND JENKINS, LTD.
20 North Wacker Drive, Suite 1660
Chicago, Illinois 60606
(312) 984-6400

## CERTIFICATE OF SERVICE

I, Howard C. Jablecki, an attorney, certify that I caused a copy of this Notice, and the attachment(s) described therein to be served upon the above-named attorneys, electronically, by filing the same with the Northern District of Illinois' CM-ECF online system on May 27, 2008, and also served this Notice and the attachment(s) described therein by mailing a copy to the above-named attorney at their respective address and depositing the same in the U.S. Mail at 20 North Wacker Drive, Chicago, Illinois, at or before 5:00 p.m. on May 27, 2008.

/s/ Howard C. Jablecki